Krystal Rena King v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-515-CR

KRYSTAL RENA KING APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I. Introduction

Appellant 
Krystal Rena King appeals her conviction for murder.  A jury found King guilty and assessed her punishment at fifty years’ confinement, and the trial court sentenced her accordingly.  In fifteen points, King complains that the trial court erred by admitting extraneous offense evidence, by admitting a co-conspirator’s 
statements, by denying King’s requested accomplice witness charges, and by failing to include a proper application paragraph in its charge on duress.  We will affirm
.

II.  Factual and Procedural Background

On June 9, 2003, Lake Dallas police began investigating the disappearance of Denise Johnson.  Four days later, Oklahoma State Bureau of Investigation agents found Johnson’s body in a field in Oklahoma.  The body was wrapped in plastic wrap and blankets and partially cemented inside a large trash barrel.   

The State charged King, Steven Wiederhold, Scott List, and Tammy Slone with Johnson’s murder.  The State also charged King, Wiederhold, List, Slone, and Angela Smith with tampering with evidence, a charge stemming from the transportation and disposal of the body.  Prior to trial, King’s trial counsel made an oral motion to sever the prosecution of the two charges against King, and the trial court granted the motion; the State proceeded to trial on only the murder charge.   

At trial, the State’s evidence showed that King, Wiederhold, List, and Slone conspired to commit Johnson’s murder and murdered her one evening at her apartment.  Initially, Wiederhold, List, and Slone attempted to kill Johnson by putting rat poison in her spaghetti.  When this effort was unsuccessful, Wiederhold, List, and Slone held down Johnson while King suffocated and eventually stabbed her.  The four co-conspirators then wrapped the body in plastic wrap and blankets and put it in the bedroom closet in Johnson’s apartment.  Several days later, the co-conspirators partially cemented the body inside a large trash barrel.  They left the body in Johnson’s bedroom closet for twelve days, and during that time they continued to wrap the body in plastic wrap, putting dryer sheets, baking soda, and baby powder between the layers of plastic wrap to mask the odor.   

After the murder, King and Wiederhold went to Thomas Wiley’s house and asked him to help them dispose of the body and of Johnson’s belongings, but Wiley refused to help.  Later, Wiederhold met Smith on a phone chat line.  After several conversations and an in-person meeting at a Chuck E. Cheese restaurant, Wiederhold showed the body to Smith and requested her help in disposing of the body, allegedly threatening her life if she did not help.  Smith agreed to help, and Wiederhold and List loaded the barrel containing the body into a U-Haul trailer attached to Smith’s truck.  Wiederhold, List, Slone, and Smith drove the U-Haul trailer to Oklahoma, where they dumped Johnson’s body by the side of a road.  King stayed at Johnson’s apartment while the others transported and disposed of Johnson’s body. 

At trial, King testified on her own behalf that she went along with the murder only because of her fear of co-conspirator List.  King testified that List threatened to kill her if she did not kill Johnson.  She testified that she did not go to the police after the murder because she feared that List would “get to [her] before the police could get to him.”    

III.  Same Transaction Contextual Evidence

Before and during trial, King’s counsel objected to the admission of any evidence regarding the “purported attempt to dispose of a deceased body as evidence against Krystal Rena King.”  Specifically, he objected under rules of evidence 401 through 404,
(footnote: 1) arguing that the evidence was not relevant to the murder charge, was inadmissable as extraneous offense evidence, and was unfairly prejudicial in relation to its probative value.  Before opening statements, the following exchange took place between the prosecutor and King’s attorney:

[The Prosecutor]:  The body that [defense counsel] is referring to is the deceased in this particular case alleged in the indictment, Denise Johnson, and we’re going to have to offer evidence of the disposition of that body and the recovery of that body in proving our case.  We’re also going to offer evidence of what happened to that body along the way.  And the fact that there are also charges of tampering with evidence . . . does not, I believe, prevent us from going into that evidence which proves our case.

[King’s Counsel]:  And my objection would be furthered by the fact that’s why we did sever it.  She’s standing trial for the murder of one Denise Johnson, not with tampering with evidence after some purposed murder of Denise Johnson.  We feel that – again, reurge the 404 objection, as well as the 401 through 403.

The trial court overruled these objections. 

The State initially sought to introduce evidence concerning the co-conspirators’ transportation of the body through the testimony of the U-Haul employee who rented the trailer to Wiederhold and Smith; King’s counsel again objected under rules 401 through 404.  The trial court overruled those objections, and King’s counsel requested a limiting instruction, which the court also denied. King continued to object under rules 401 through 404 to all testimony concerning the events occurring after the murder.  King also objected under rules 401 through 404 to the State’s evidence documenting the events after the murder.  This evidence included photographs of Johnson’s apartment, the barrel containing the body, the location where the body was found, and the co-conspirators’ trip to Oklahoma to dump the body. 

Each of King’s first eight points challenges, in some respect, the trial court’s admission of evidence concerning the events after the murder, which King contends relates only to the severed tampering with evidence charge.

A.  No “Effective Denial” of Severance Right and

Probative Value Not Outweighed by Prejudicial Effect

In her first point, King contends that although the trial court granted her motion for severance and the State proceeded to trial on only the murder charge, nonetheless, the trial court erroneously admitted evidence concerning the events occurring after the murder that was related to the tampering with evidence charge,
(footnote: 2) thereby “effectively depriving” her of the right to severance afforded by the Texas Penal Code.  In her seventh point, King contends that this evidence was more prejudicial than probative.

A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.  
Tex. Penal Code Ann. 
§ 3.02(a) (Vernon 2003); 
see id.
 § 3.01 (defining “criminal episode” as the commission of two or more offenses that are the repeated commission of the same or similar offenses).  Whenever two or more offenses have been consolidated or joined for trial, the defendant has the right to a severance of the offenses. 
 Id.
 § 3.04(a) (Vernon Supp. 2005).  The right to severance is absolute, and the granting of a motion for severance is mandatory.  
See Coleman v. State
, 788 S.W.2d. 369, 371 (Tex. Crim. App. 1990).

We review rulings on the admissibility of evidence under an abuse of discretion standard.
  Santellan v. State
, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  As long as the trial court’s ruling was within the “zone of reasonable disagreement,” there is no abuse of discretion, and we will uphold the trial court’s ruling.  
See id.  
Generally, evidence of other crimes, wrongs, or bad acts is not admissible during the guilt/innocence phase of the trial.  
Tex. R. Evid
. 404(b).  However, evidence of extraneous bad acts is admissible when it constitutes “same transaction contextual evidence.”  
Camacho v. State
, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993), 
cert. denied
, 510 U.S. 1215 (1994).  Same transaction contextual evidence is evidence of another crime or act that is so intertwined with the charged offense that full proof of either crime cannot be had without eliciting testimony of the other.  
Mayes v. State
, 816 S.W.2d 79, 86-87 n.4 (Tex. Crim. App. 1991).  The purpose for admission of same transaction contextual evidence is not to show character conformity but to help the jury better understand the nature of the alleged crime.  
Camacho
, 864 S.W.2d at 532
.  The jury has the right to hear evidence concerning events immediately prior and subsequent to the commission of the offense so that it may realistically evaluate the evidence.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App.), 
cert. denied
, 532 U.S. 944 (2000).  
Thus, the granting of a severance does not automatically preclude the admission of extraneous offenses that are same transaction contextual evidence. 

Conversely, in a joint trial of two or more offenses, when the offenses are intertwined in one inseparable transaction, all evidence showing the circumstances of the transaction, the events immediately before and after the event, and the general context of the offense is admissible and may be fully considered by the jury.  
Gibson v. State
, 875 S.W.2d 5, 6-7 (Tex. App.—Texarkana 1994, pet. ref’d).  Even when a trial court erroneously denies a motion for severance, if the offenses are intertwined in one inseparable transaction, the error is harmless because evidence of one offense would have been admissible as same transaction contextual evidence in the separate prosecution of the other offense.  
See, e.g., Tovar v. State
, 165 S.W.3d 785, 795 (Tex. App.—San Antonio 2005, no pet.) (holding severance error, if any, harmless because the evidence would have been admissible in a separate trial as same transaction contextual evidence); 
Dominguez v. State
, 62 S.W.3d 203, 208 (Tex. App.—El Paso 2000, pet. ref’d) (same); 
see also Matthews v. State
, 152 S.W.3d 723, 730–31 (Tex. App.—Tyler 2004, no pet.) (holding that, in case dealing with discretionary severance, trial court did not err by refusing to sever multiple offenses because, even if the cases had been tried separately, it was probable that evidence relating to the other offenses would have been admissible to refute defensive theory); 
Salazar v. State
, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d) (same).

In addition to satisfying the requirements of same transaction contextual evidence, to be admissible, extraneous offense evidence must also satisfy the balancing test of rule 403.  
Tex. R. Evid. 403; 
Mayes
, 816 S.W.2d at 86-87 n.4.  Generally, although a trial court must still perform a balancing test to see if the same transaction contextual evidence’s probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury’s comprehension of the whole criminal transaction.  
Swarb v. State
, 125 S.W.3d 672, 681 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).  Under rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid.
 403. 
 A rule 403 analysis by the trial court should include, but is not limited to, the following considerations:  (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent’s need for the evidence.  
Erazo v. State
, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  

In determining whether the danger of unfair prejudice from photographs substantially outweighs their probative value, the trial court may consider several factors.
  Long v. State
, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), 
cert. denied, 
505 U.S. 1224 (1992).  They include the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, the availability of other means of proof, and the circumstances unique to each individual case.  
Id
.  
Autopsy photographs are generally admissible unless they depict mutilation caused by the autopsy itself.  
See Rayford v. State
, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003), 
cert. denied
, 543 U.S. 823 (2004).  

Here, after King objected to the evidence of the events that followed Johnson’s murder, the trial court was required to determine whether evidence of those events was relevant to a material issue in the case other than King’s character and whether the evidence possessed probative value that substantially outweighed its prejudicial effect.  
See
 Tex. R. Evid.
 403-404; 
Montgomery v. State
, 810 S.W.2d 372, 377-78 (Tex. Crim. App. 1990).  As the State points out, without evidence of how the co-conspirators transported the body to Oklahoma and dumped it there, the jury could be confused as to why an Oklahoma medical examiner, instead of a Texas medical examiner, presented the autopsy evidence.  Without evidence of how the co-conspirators wrapped the body in plastic wrap and left it in a closet for twelve days, the jury would be confused as to why the medical examiner was unable to determine whether Johnson died from asphyxiation or from a stab wound; the body was in such a state of decay when the authorities found it that the cause of death was undeterminable.  The evidence also explained why authorities suspected a murder had occurred and how they ultimately unraveled the details of the crime and discovered the guilty parties.  The evidence “fills in gaps of the interwoven events and consequences of [the co-conspirators’] criminal conduct and thus helps the jury to understand the case in context.”  
Prible v. State
, 175 S.W.3d. 724, 732 (Tex. Crim. App.), 
cert. denied
, 126 S. Ct. 481 (2005); 
see Schexnider v. State
, 943 S.W.2d 194, 201-02 (Tex. App.—Beaumont 1997, no pet.) (holding evidence of appellant’s dismemberment of victim’s body properly admitted as same transaction contextual evidence).  

Further, the evidence was probative to rebut King’s defensive theory that she committed the murder because List placed her under duress.  The evidence showed that although King was often alone in Johnson’s apartment during the twelve days after the murder, she did not go to the police station located fewer than two blocks from Johnson’s apartment.  
See Crank v. State
, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (“Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory.”),
 disapproved of on other grounds by Alford v. State
, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993);
 Higginbotham v. State
, 919 S.W.2d 502, 506 (Tex. App.—Fort Worth 1996, pet. ref’d) (holding that probative value of evidence admitted to rebut defensive theory
 was “quite high”).  Therefore, the evidence relating to the events after the murder, although also relevant to the tampering with evidence charge, was likewise relevant to the murder charge.  
See
 Tex. R. Evid.
 403-404; 
Montgomery
, 810 S.W.2d at 377-78.  We hold that the admission of this evidence did not effectively deprive King of her severance rights; the evidence was admissible regardless of whether the charges against her were tried together or separately.  We overrule King’s first point. 

Moving to King’s argument that the same transaction contextual evidence was more prejudicial than probative, we note that this evidence did not have a high potential to impress the jury in some irrational, indelible way in light of the charged offense, especially considering the fact that the evidence made it clear that King did not physically participate in transporting or disposing of the body.  
See Erazo, 
144 S.W.3d at 489.  The State did spend a large amount of time at trial developing this evidence.  
See id.  
The State called several witnesses to testify regarding the events that took place after Johnson’s death, and over half of the 212 exhibits admitted at trial portrayed the co-conspirators’ concealment, transportation, and disposition of the body.  But the State needed the evidence to explain the physical status of the body when found, the medical examiner’s inability to definitively determine the cause of death, and an Oklahoma examiner’s involvement in the autopsy.  
See id
.   

King specifically points to the photograph of Johnson’s face in State’s Exhibit 136 as prejudicing the jury, but the State offered this photograph, taken during the autopsy of Johnson’s body, to show Johnson’s mouth stuffed with paper towels—a possible cause of death.  The photograph depicts nothing other than what was testified to at trial, it directly relates to the medical examiner’s testimony that asphyxiation was a possible cause of death, and it does not depict any mutilation resulting from the autopsy.  
See Rayford
, 125 S.W.3d at 529; 
Long
, 823 S.W.2d at 272.  We hold that the trial court did not abuse its discretion by determining that the probative value of the same transaction contextual evidence was not outweighed by its prejudicial effect. 

After considering the required factors, we conclude that the trial court's decision to admit the same transaction contextual evidence was within the zone of reasonable disagreement; therefore, we hold that the trial court did not abuse its discretion.
  See 
 
Erazo
, 144 S.W.3d at 489 (setting forth factors);  
Santellan
, 939 S.W.2d at 169 (applying abuse of discretion standard).  We overrule King’s seventh point.
 
B.  No Error by Refusing to Give a Limiting Instruction  

In her eighth point, King contends that the trial court erred by refusing to give the jury a limiting instruction addressing the same transaction contextual evidence it admitted.  Rule 105 of the Texas Rules of Evidence requires a limiting instruction, upon proper request, when evidence is admitted for one purpose but is not admissible for another purpose.  
Tex. R. Evid.
 105(a); 
see also Rankin v. State
, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996).  Because evidence of extraneous acts is admissible for some purposes but inadmissible for others, on request, the accused is entitled to a mid-trial limiting instruction addressing extraneous offense evidence. 
 Rankin
, 974 S.W.2d at 711-12.  The trial court is not required, however, to give a limiting instruction for same transaction contextual evidence. 
 See Castaldo v. State, 
78 S.W.3d 345, 352 (Tex. Crim. App. 2002); 
Wesbrook
, 29 S.W.3d at 114-15;
 Camacho
, 864 S.W.2d at 535. 

Here, we have already determined that the evidence related to tampering with evidence is same transaction contextual evidence of the murder, and therefore, the trial court was not required to give a limiting instruction.  
See Castaldo, 
78 S.W.3d at 352; 
Wesbrook
, 29 S.W.3d at 114-15;
 Camacho
, 864 S.W.2d at 535.  Accordingly, the trial court did not err by denying King’s requests for limiting instructions.  We overrule King’s eighth point.

C.  No Conflict Between Rules of Evidence and Right to Severance

In her fourth point, King contends that the proper admission of extraneous offense evidence under rules of evidence 403 and 404(b) conflicts with the right to severance under Texas Penal Code section 3.04.  King cites no authority to support her arguments.  
See 
Tex. R. App. P.
 38.1(h).  However, because we have held that the trial court did not “effectively deny” King’s right to severance by admitting evidence related to the tampering with evidence charge, King’s argument must fail.  We hold that the admission of the complained-of evidence did not violate King’s right to severance under the penal code because the evidence was properly admissible as same transaction contextual evidence.  We overrule King’s fourth point.

D.  No Violation of Right to Fair and Impartial Trial
 

In her second and third points, King contends that the trial court’s admission of extraneous offense evidence—the same transaction contextual evidence concerning the events after Johnson’s murder—deprived her of her right to a fair and impartial trial under the United States and Texas Constitutions.  In her fifth and sixth points, King contends that the admission of this evidence, even if proper under rules of evidence 403 and 404(b),  conflicts with her right to a fair and impartial trial under the United States and Texas Constitutions.  For the same reasons expressed in our discussion of King’s first point, we hold that the admission of the same transaction contextual evidence did not deny her a fair and impartial trial.  The properly admitted same transaction contextual evidence did not offend King’s due process rights.  
Prible
, 175 S.W.3d at 733.  We overrule King’s second, third, fifth, and sixth points.

IV.  Co-Conspirator’s Statements Properly Admitted

Three of the state’s witnesses, Thomas Wiley, Angela Smith, and Tammy Slone, testified regarding statements made by Wiederhold in their presence. Wiley testified that Wiederhold and King visited him at his home on June 1st.  As Wiederhold explained to Wiley that King and another woman had been in “a fight that got out of hand” and had resulted in the other woman’s death, King interrupted Wiederhold and asked if he was sure that they could trust Wiley. Wiederhold reassured King, and she eventually reiterated Wiederhold’s statement that she had been in a fight that had gotten out of hand.  In King’s presence, Wiederhold explained to Wiley that he had put the woman’s body in a barrel half full of concrete and requested Wiley’s assistance in dumping the barrel. 

Angela Smith testified that she first met Wiederhold on June 4th
.  On June 6th, Smith went to Johnson’s apartment, where Wiederhold showed her Johnson’s body, told her that he needed to use her truck to dispose of the body, and threatened her with death if she refused.  Over the next two days, Smith heard Wiederhold on the phone with King telling her to wrap the body and to turn the air conditioner down; on another occasion, Wiederhold instructed Smith to call King and to tell her to keep wrapping the body in plastic wrap, to turn the air conditioner down, and to cover the body with a blanket.  Smith testified that Wiederhold instructed her, List, and Slone to blame the murder on King.

Slone testified that Wiederhold told her to get rat poison in preparation for Johnson’s murder.  After the failed attempt to kill Johnson with the rat poison, Wiederhold told List and Slone that the rat poison did not work and that they should keep Johnson away from the telephone so that Johnson could not call the hospital.  Wiederhold then told Slone and List that King was coming over and that he wanted King to do most of the murder because he wanted it to fall on her if anything happened.  After King arrived at Johnson’s apartment, Wiederhold told King, Slone, and List to follow him outside where Wiederhold explained how they were going to kill Johnson.  During trial, King objected to any statements made by Wiederhold to Wiley, Smith, or Slone, arguing that the statements were hearsay and violated King’s confrontation rights.  The trial court overruled King’s objections.

A.  Co-Conspirator Statements Not Testimonial and Not Hearsay

In her ninth point, King contends that the admission of Wiederhold’s statements to Wiley, Smith, and Slone violated her confrontation rights under the Sixth Amendment to the United States Constitution.  
The State responds that because Wiederhold was a co-conspirator and his statements were made in furtherance of the conspiracy, they were not “testimonial” and, therefore, their admission did not implicate the Confrontation Clause.  In her twelfth point, King contends that the trial court erred by admitting Wiederhold’s statements in violation of the hearsay rules. 
The State responds that the trial court properly admitted the statements as statements made in furtherance of the conspiracy and as adoptive admissions.

In all state and federal criminal prosecutions, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, “to be confronted with the witnesses against him.” 
 U.S. Const. 
amends. VI, XIV; 
Crawford v. Washington
, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004); 
Pointer v. Texas
, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965) (applying the Sixth Amendment to the states).  In 
Crawford v. Washington
, the Supreme Court held that the Confrontation Clause bars the admission of out-of-court testimonial statements made by a witness who does not testify unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness.  
541 U.S. at 68, 124 S. Ct. at 1374.  
Therefore, to implicate the Confrontation Clause, an out-of-court statement must be (1) made by an absent witness and (2) testimonial in nature.  
See id. 
at
 
68, 124 S. Ct. at 1374.

Although the Supreme Court in 
Crawford
 declined to define “testimonial,” it recognized that statements made in the following contexts are indisputably testimonial:  ex parte testimony at a preliminary hearing, testimony before a grand jury, testimony at a former trial, and statements derived from police interrogations. 
 See id. 
at 68, 124 S. Ct. at 1374.  We 
review a constitutional legal ruling, i.e., whether a statement is testimonial or nontestimonial, de novo.  
Wall v. State
, No. PD-1631-04, 2006 WL 119575
, at *6 (Tex. Crim. App. Jan. 18, 2006).  The legal ruling of whether a statement is testimonial under 
Crawford
 is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant.  
Id
.  
Generally speaking, a statement is “testimonial” if it is a solemn declaration made for the purpose of establishing some fact.  
Russeau v. State
, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005) (citing 
Crawford
, 541 U.S. at 51, 124 S. Ct. at 1354)
,
 petition for cert. filed, 
74 U.S.L.W. 3407 (U.S. Jan. 3, 2006) (No. 05-856).

Generally, a co-conspirator’s statements made in the furtherance of the conspiracy are nontestimonial.  
See Crawford
, 541 U.S. at 56, 124 S. Ct. at 1367 (stating that “[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or 
statements in furtherance of a conspiracy
”) (emphasis added); 
Wiggins v. State
, 152 S.W.3d 656, 659 (Tex. App.—Texarkana 2004, pet. ref’d) (stating that “[c]o-conspirator statements made in the furtherance of a conspiracy are nontestimonial”); 
see also Mancilla v. State
, No. 05-03-00167-CR, 2005 WL 1022451, at *5 (Tex. App.—Dallas May 3, 2005, pet. ref’d) (not designated for publication) (holding that statements made during a meeting to arrange the sale of illegal contraband were nontestimonial statements by co-conspirators). 
Wiederhold was a co-conspirator in Johnson’s murder.  Wiederhold’s statements to Wiley, Smith, and Slone, set forth above, were made in furtherance of the conspiracy to conceal Johnson’s murder.  None of Wiederhold’s statements were made in the context of a police investigation or interrogation.  Wiederhold’s statements were not made to a police officer or to a court official but instead were made to friends in the course of conversations about how Johnson had purportedly died and about disposing of Johnson’s body.  Consequently, we hold that Wiederhold’s statements to Wiley, Smith, and Slone are nontestimonial.  
See 
Crawford
,
 541 U.S. at 68, 124 S. Ct. at 1374; 
Wiggins, 
152 S.W.3d at 659; 
see also Mancilla, 
2005 WL 1022451, at *5.  
Therefore, 
Crawford
 does not bar their admission. 

King nonetheless argues that the complained-of statements are testimonial because Wiederhold purportedly made these statements with the belief that they could be later used in trial.  But whether 
a statement is testimonial under 
Crawford
 is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant.  
Wall, 
2006 WL 119575
, at *6.  Here, 
nothing about the context of Wiederhold’s statements to Wiley, Smith, and Slone would lead an objectively reasonable witness to believe that the statements would be available for use later at trial.  
See id
. at *9 n.45; 
cf. Moore v. State
, 169 S.W.3d 467, 475 (Tex. App.—Texarkana 2005, no pet.) (holding that videotaped statement was made under such circumstances that an objective witness would have believed it would be available for later use at trial).  Accordingly, the trial court did not err by admitting these statements over King’s complaint that they violated her right to confrontation.  We overrule King’s ninth point. 

King further argues that even if we conclude that the statements are nontestimonial, we must nevertheless analyze the admission of these statements under the old standard set forth in 
Ohio v. Roberts
 and reverse her conviction because the statements constituted hearsay and did not bear sufficient indicia of reliability.  
See 
448 U.S. 56, 66, 100 S. Ct. 2531, 2539 (1980),
 abrogated by Crawford
, 591 U.S. at 60, 124 S. Ct. at 1369.  Under
 rule of evidence 801(e)(2)(E), a statement is not hearsay if it is offered against a party and is a statement made by a co-conspirator “during the course and in furtherance of the conspiracy.” 
 Tex. R. Evid.
 801(e)(2)(E).  The out-of-court statement by a co-conspirator must be more than merely related to the conspiracy; it must further the conspiracy.  
Guidry v. State, 
9 S.W.3d 133, 148 (Tex. Crim. App. 1999), 
cert. denied
, 531 U.S. 837 (2000).  A statement only furthers a conspiracy if it advances the cause of the conspiracy or serves to facilitate it. 
 Guidry, 
9 S.W.3d at 148; 
see
 
Byrd v. State
, No. PD-0235-04, 2005 WL 3408054, at *5 (Tex. Crim. App. Dec. 14, 2005).  A trial court has discretion to determine the admissibility of statements under the co-conspirator rule.  
Legate v. State
, 52 S.W.3d 797, 803 (Tex. App.—San Antonio 2001, pet. ref’d).

Statements that are made in furtherance of a conspiracy include those made (1) with intent to induce another to deal with co-conspirators or in any other way to cooperate with or assist co-conspirators, (2) with intent to induce another to join the conspiracy, (3) in formulating future strategies of concealment to benefit the conspiracy, (4) with intent to induce continued involvement in the conspiracy, or (5) for the purpose of identifying the role of one conspirator to another.  
Lee v. State
, 21 S.W.3d 532, 538 (Tex. App.—Tyler 2000, pet. ref’d) (citing 
Fairow v. State
, 920 S.W.2d 357, 362 (Tex. App.—Houston [1st Dist.] 1996), 
aff’d
, 943 S.W.2d 895 (Tex. Crim. App. 1997)).  Conversely, statements that are not made in furtherance of a conspiracy, and thus remain hearsay, include those that are (1) casual admissions of culpability to someone the declarant had individually decided to trust; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) “puffing” or “boasting” by co-conspirators.  
Id
.

Another exemption from the hearsay rules is an adoptive admission.  
Tex. R. Evid.
 801(e)(2)(B).  A statement offered against a party that is “a statement of which the party has manifested an adoption or belief in its truth” is not hearsay.  
Id.; see also Paredes v. State
, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004) (holding that statements made by co-defendant in defendant’s presence were admissible as adoptive admissions when defendant, by his actions and responses, showed agreement with statement).  A person’s adoption of a statement may be manifested in actions, responses, or acquiescence.  
Legate
, 52 S.W.3d at 802.

Here, Wiederhold’s statement to Wiley that he needed his help disposing of the body and Wiederhold’s statement to Smith that he needed to use her truck to dispose of the body were made in furtherance of the conspiracy because Wiederhold made the statements with the intent to induce Wiley and Smith to assist him and the other co-conspirators, with the intent to induce Wiley and Smith to join the conspiracy, and in formulating a future strategy of concealment—dumping the barrel containing the body—to benefit the conspiracy.  
See Lee
, 21 S.W.3d at 538 (citing 
Fairow
, 920 S.W.2d at 362).  King argues that these statements were “at best, statements [made] in furtherance of a new conspiracy to transport the body,” but Wiederhold made these statements to Wiley and Smith in order to conceal evidence that would incriminate the co-conspirators for murder.  
See Sherwood v. State
, 732 S.W.2d 787, 796 (Tex. App.—Fort Worth 1987, no pet.) (noting that conspiracy continued until all incriminating evidence had been concealed); 
cf. Byrd
, 2005 WL 3408054, at *5 (holding as inadmissible in murder trial a statement made by appellant’s brother rhetorically asking why appellant had to hit the victim because statement did not advance objective of later conspiracy to hinder appellant’s apprehension).

Additionally, Wiederhold’s statements to Smith and King, instructing them  to wrap the body and to turn down the air conditioner, were also made in furtherance of the conspiracy in formulating a future strategy of concealment—masking the odor until the co-conspirators could dispose of the body.  
See Lee
, 21 S.W.3d at 538 (citing 
Fairow
, 920 S.W.2d at 362).  Wiederhold’s statements to Slone, detailed above, were made for the purpose of identifying the role of one conspirator to another and in order to formulate future strategies of concealment to benefit the conspiracy.  
See Lee
, 21 S.W.3d at 538; 
Fairow
, 920 S.W.2d at 362.  

King argues that Wiederhold’s statement to Wiley regarding how the murder occurred—that it was a fight that had gotten out of hand—was not made in furtherance of the conspiracy.  As the State points out, however, this statement falls under the adoptive admissions exception to the hearsay rule.  
See 
Tex. R. Evid.
 801(e)(2)(B).  Wiederhold, a co-conspirator, made the statement in King’s presence, and Wiley testified that King acknowledged the statement by “shaking her head like this.”  
See Legate
, 52 S.W.3d at 802. Additionally, King further acknowledged Wiederhold’s statement by making the identical statement—that it was a fight that had gotten out of hand—later on in the conversation.  
See id.

We hold that the challenged statements fall within the co-conspirator statements and adoptive admissions exceptions to the hearsay rule.
(footnote: 3)  
See 
Tex. R. Evid
.
 801(e)(2)(B), (E).  Although we question the continued viability of the
 Ohio v. Roberts
 standard, even if we were to address King’s claim under that standard, the outcome would be the same because the complained-of statements fall within the firmly rooted hearsay exceptions for statements made by a co-conspirator in the furtherance of a conspiracy or for adoptive admissions.  
See Wiggins
, 152 S.W.3d at 660.  Accordingly, we hold that the trial court did not abuse its discretion by admitting the statements.  
Santellan
, 939 S.W.2d at 169.  We overrule King’s twelfth point.

B.  Texas Law does not Grant Broader Rights

of Confrontation than Federal Law

In King’s tenth and eleventh points, she contends that the admission of Wiederhold’s statements violated her rights to cross-examination and confrontation guaranteed by the Texas Constitution and the code of criminal procedure.  
See
 Tex. Const.
 art. I, § 10; 
Tex. Code Crim. Proc. Ann.
 arts. 1.05, 1.25 (Vernon 2005).  The State responds that the Texas Constitution and the code of criminal procedure do not provide greater protection than the United States Constitution.  We agree.

Texas courts have declined to apply the state Confrontation Clause guarantee in a broader manner than the federal Confrontation Clause guarantee. 
Murdock v. State
, 840 S.W.2d 558, 564 (Tex. App.—Texarkana 1992), 
vacated on other grounds
, 845 S.W.2d 915 (Tex. Crim. App. 1993)
.  Moreover, articles 1.05 and 1.25 of the code of criminal procedure do not grant broader rights of confrontation than the Texas Constitution.  
Id.
;
 see
 
Tex. Code Crim. Proc. Ann
. arts. 1.05, 1.25.  Accordingly, we overrule King’s tenth and eleventh points and analyze her contention, as we have done above, under the Sixth Amendment only.
 
See Murdock
, 840 S.W.2d at 564. 

V.  Requested Accomplice Witness Charges Properly Denied
 

After both sides rested, but before the court read the charge to the jury, King requested that the trial court instruct the jury that Slone and Smith were accomplices as a matter of law and that, therefore, the testimony of one could not be used to corroborate the testimony of the other.  King filed proposed instructions relating to her requests:  the first two proposed instructions, entitled “Accomplice Witness as a Matter of Law,” instructed the jury that Slone and Smith were accomplices as a matter of law, and the third proposed instruction instructed the jury that Slone and Smith were multiple accomplice witnesses who could not corroborate each other.  The trial court included a charge that Slone was an accomplice witness, but it denied King’s other two requested charges. 

In her thirteenth and fourteenth points, King contends that the trial court erred by denying her requested accomplice witness charge as to Angela Smith and by denying her requested multiple accomplice witness charge regarding the corroboration of both Slone’s and Smith’s testimony.  The State responds that the trial court did not err by denying both requested charges because Smith was not an accomplice to the murder. 

Appellate review of error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Id.
 at 731-32. A person is an accomplice if he participates with the defendant before, during, or after the commission of a crime with the required culpable mental state.  
Paredes
, 129 S.W.3d at 536.  The participation must involve an affirmative act that promoted the commission of the offense with which the accused is charged.  
Id.
  Mere presence during the commission of the crime, knowledge about the crime and failure to disclose it, or even concealment of the crime is not sufficient to render a person an accomplice.  
Medina v. State
, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000).  A witness’s complicity with the accused in the commission of a different, but related, offense does not make her an accomplice to the crime for which the accused is on trial.  
Creel v. State
, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988).  An accomplice as a matter of law is one who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense.  
Paredes
, 129 S.W.3d at 536.
  

The trial court is under no duty to instruct the jury regarding accomplice witnesses unless there exists no doubt or the evidence clearly shows that a witness is an accomplice 
as a matter of law
.  
Id. 
 If the evidence presented by the parties conflicts concerning whether the witness is an accomplice, then the trial court must leave to the jury the question of whether the inculpatory witness is an accomplice 
as a matter of fact
 under instructions defining the term “accomplice.”  
Id.  

In this case, the evidence clearly shows that Smith’s only connection to the charged offense was in concealing the crime.  
See Medina
, 7 S.W.3d at 641.
  Smith took no part in planning or committing the murder; in fact, she did not even meet the co-conspirators to the murder until after the murder had been committed.  She was thus not an accomplice as a matter of law because she was not subject to prosecution for the murder or a lesser included offense. 
 See Paredes
, 129 S.W.3d at 536.  Additionally, Smith’s complicity with Wiederhold, List, Slone, and King in the commission of the different, but related, offense of tampering with evidence does not make her an accomplice to the murder for which King was on trial.  
See Creel
, 754 S.W.2d at 213.  

King concedes that “there is ample support for the proposition that even participating in the concealment of the body or complicity in other crimes for which a defendant is charged does not make one an accomplice witness.” However, she contends that had the offenses of murder and tampering with evidence been tried together, she would have been entitled to a charge instruction that Smith was an accomplice as a matter of law.  But King moved for and obtained a severance so that these two offenses would not be tried together.  And we have already held that the trial court did not “effectively deny” King’s right to severance by admitting evidence related to the tampering with evidence charge as same transaction contextual evidence.  Smith was not an accomplice witness in King’s murder prosecution, so Smith’s testimony did not require corroboration under article 38.14 of the code of criminal procedure.  
See Munoz
, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993).  Slone was the only accomplice to testify at trial, and therefore, the court’s charge correctly excluded a charge concerning corroboration of multiple accomplice witnesses. 

We hold that the trial court did not err by refusing to instruct the jury that Smith was an accomplice witness or by refusing to charge the jury concerning multiple accomplice witnesses.  We overrule King’s thirteenth and fourteenth points.

VI.  Alleged Improper Application Paragraph Did Not Harm King

King submitted a proposed instruction on duress to be included in the court’s charge, including the following application paragraph:

Now, therefore, if you find from the evidence beyond a reasonable doubt that the defendant did commit the offense of murder, either acting alone or as a party as herein defined, as alleged in the indictment and hereinbefore defined in this charge, but you further find by a preponderance of the evidence that Scott List had threatened to kill the defendant if she did not participate in said murder, and that Scott List’s threats were such threats of force as would render a person of reasonable firmness incapable of resisting the pressure, and that the defendant, Krystal Rena King, was in fear of imminent loss of her life or serious bodily injury [in] the hands of Scott List if she did not participate in the murder and that, so believing, she did participate therein, then you will acquit the defendant and say by your verdict “Not Guilty.” 

The court agreed to charge the jury on duress, but it refused to submit King’s requested application paragraph and instead included the following:

Now, therefore, if you find from the evidence beyond a reasonable doubt that the defendant did commit the offense of murder, either acting alone or as a party as herein defined, as alleged in the indictment and previously defined in this charge, but you further find by a preponderance of the evidence that the defendant engaged in the proscribed conduct because she was compelled to do so by the threat of imminent death or serious bodily injury to herself or another, then you will acquit the defendant and you will find the defendant not guilty. 

Immediately preceding this application paragraph, the court instructed the jury that

duress is an affirmative defense to prosecution for any offense.  It is an affirmative defense if the person charged engaged in the proscribed conduct because she was compelled to do so by the threat of imminent death or serious bodily injury to herself or another.  Such compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting that pressure.

The burden of proof of the affirmative defense of duress rests upon the defendant.  To establish such defense, the defense must prove it by a preponderance of the evidence.  “Preponderance of the evidence” means the greater weight and degree of the credible evidence in the case.

The defense of duress is unavailable if the actor intentionally, knowingly, or recklessly placed herself in a situation in which it was probable that she would be subjected to compulsion. 

In closing arguments, both sides made arguments based on King’s alleged fear of List. 

In her fifteenth point, King argues that the trial court erred by failing to include her proposed duress application paragraph in the charge; she claims that she was harmed by this error.  Specifically, King argues that because the trial court failed to name List as the person King feared, “[t]he jury very easily could have gotten confused in examining the charge on duress and might have applied that law to whether Wiederhold had threatened force rather than recalling [King’s] testimony that she was fearful because of actions or threats by List.” 

The function of the jury charge is to instruct the jury on the law applicable to the case.  
Dinkins v. State
, 894 S.W.2d 330, 339 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995).  A trial court’s charge to the jury must include not only an abstract statement of the law but also an application of the law to the facts in the case.
  Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2005); 
Gray v. State
, 152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004); 
Williams v. State
, 622 S.W.2d 578, 579 (Tex. Crim. App. [Panel Op.] 1981).  When reviewing the charge for alleged error, we examine the charge as a whole, considering the relationship between the abstract and application portions of the charge.  
See Caldwell v. State, 
971 S.W.2d 663, 666 (Tex. App.—Dallas 1998, pet ref’d).  When the trial court includes an application paragraph in its charge, the likelihood of jury confusion is low even though the application given was incomplete.  
Oliver v. State
, 685 S.W.2d 54, 56 (Tex. Crim. App. 1985).  

Here, the record is replete with references to King’s alleged fear of List.  On direct and cross-examination, King testified that she feared List.  Both sides questioned several witnesses regarding whether List was prone to violence and whether King had ever mentioned to them that she feared List, and both sides discussed King’s alleged fear of List in their closing arguments.  In fact, the only defensive theory relied on by King was that she participated in the murder because List placed her under great duress.  
See id. 
 Thus, there could have been no misunderstanding regarding who allegedly placed King under duress.  
See id.; see also Green v. State
, 930 S.W.2d 655, 658 (Tex. App.—Fort Worth 1996, pet. ref’d) (explaining that when application paragraph on law of parties failed to identify parties other than appellant, the jury could not have been confused based on the evidence, the abstract law given to the jury, and the arguments of counsel).

Reviewing the application portion of the jury charge in conjunction with the entire jury charge, the state of the evidence, the arguments of counsel, and other relevant information instructions, as we must, we hold that the jury could not have been confused about who formed the basis of King’s defensive theory of duress.  
See
 
Almanza v. State
, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g) (holding that the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole”); 
see also Ovalle v. State
, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).  
Accordingly, we hold that King was not harmed by the trial court’s failure to include List’s name in its charge on duress.  We overrule King’s fifteenth point.

VII. Conclusion

Having overruled King’s fifteen points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: March 16, 2006

FOOTNOTES
1:
See 
Tex. R. Evid.
 401-404.

2:
King also claims that testimony that she used profanities toward a young child should not have been admitted because it “had no relevant purpose other than to paint [King] as a rotten person.”  King did not object to this testimony; thus, any error is not preserved for our review.  
See 
Tex. R. App. P. 33.1
(a)(1).

3:
King argues that even if we hold that the statements are admissible as co-conspirator statements, we should still consider the reliability of those statements instead of deferring to a “blanket rule” that all statements made in furtherance of a conspiracy are inherently reliable.  King argues that 
Muttoni v. State
 supports her contention, but that case dealt with the statements against penal interest exception.  
See 
25 S.W.3d 300, 306–07 (Tex. App.—Austin 2000, no pet.).
  And “any inherent unreliability that accompanies co-conspirator statements . . . is 
per se
 rebutted by the circumstances giving rise to the long history of admitting such statements.”  
Lilly v. Virginia, 
527 U.S. 116, 137, 119 S. Ct. 1887, 1900 (1999).