Opinion filed September 17, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed September
17, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-08-00086-CR

                                                       ________

 

                              UGENE
WILLIAM VICKERS, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 39th District Court

                                                  Throckmorton
County, Texas

                                                     Trial
Court Cause No. 1205

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Ugene William Vickers of murder, assessed his punishment at
twenty-five years confinement, and imposed a $10,000 fine.  We affirm.

                                                               Background
Facts

Quentin
Tarrant testified that the victim, Sheryl Kay Griffith, went to Jayton, Texas,
to get away from her involvement with drugs in Abilene.  Griffith met Vickers a
few days later at Samuel Smith=s
horse pens.  Tarrant testified that several friends, including Griffith,
Vickers, Red Mayfield, and himself, gathered there to drink beer.  The party
eventually moved to Tarrant=s
apartment where drugs were used.  At one point, Vickers and Griffith left the
party together and returned sometime later.








The
next morning, Tarrant, Mayfield, and Vickers were leaving to feed Tarrant=s horses when Griffith
flagged them down so that she could join them.  At the farm, Griffith and
Vickers went to the tack room to use drugs.  Mayfield and Tarrant testified
that Griffith began acting wild and crazy.  An argument occurred when she
grabbed Mayfield=s
hat.  Later, she grabbed a magnum rifle from Tarrant=s pickup and pointed it at Mayfield.  The gun
was successfully removed from Griffith and locked in the pickup.  Tarrant
testified that the group tied Griffith up with a halter rope for a while. 
Vickers told Tarrant that he was going to kill Griffith.  Vickers walked off
with Griffith following him.  After a while, he returned alone.  Vickers told
Tarrant and Mayfield that he killed Griffith.  The group then burned Griffith=s personal effects,
including her purse.  On their return to town, Vickers threatened Tarrant and
Mayfield with their lives and their families=
lives if they told anyone about the murder.

Tarrant
did not want Griffith=s
body on his property, and he asked Vickers to move it.  Tarrant testified that
he loaned Vickers his flatbed truck and went with him to make sure that Vickers
did in fact move the body.  He watched as Vickers loaded the body into a
fifty-five gallon barrel, rolled the barrel up a hill, and placed it on the
flatbed truck.  Vickers drove off with the barrel and returned the next morning
in Don Long=s pickup. 
Vickers told Tarrant that the flatbed truck got stuck and drove him to its
location.  Eventually, they got the flatbed truck unstuck.

Five
years later, Tarrant described this incident to police officers and took them
to the location where Vickers got stuck.  The officers searched the area and
found Griffith=s
skeletal remains in a nearby cistern.  Dr. Kathleen Nichols and Dr. Robert R.
Paine from the Lubbock Medical Examiner=s
office examined the remains.  At trial, they testified that the cause of
Griffith=s death was
undetermined but that it was probably due to homicidal violence.

                                                                         Issues

Vickers
challenges his conviction with four issues.  First, he asserts that the
evidence was factually insufficient to sustain the jury=s guilty verdict.  In his next two issues, he
complains that the trial court erred by not charging the jury at the
guilt/innocence phase that two witnesses were accomplices as a matter of law. 
Finally, he alleges that the trial court abused its discretion by denying
Vickers=s motion to
exclude evidence he claims was illegally obtained.

Factual
Sufficiency








Vickers
argues that the evidence is factually insufficient.  Specifically, he claims
that the verdict is clearly wrong and manifestly unjust because the testimony
of Tarrant and Mayfield was so weak that a jury could not rationally rely on
it.  Vickers directs us to several discrepancies between the two witnesses= testimony, the general
unreliability of the two, and the high improbability of some of Tarrant=s testimony.

In
a factual sufficiency review, we examine all the evidence in a neutral light
and determine whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  Appropriate
deference must be given to the jury=s
determination, especially concerning its judgment on the weight and credibility
of witness testimony.  Jones v. State, 944 S.W.2d 642, 648-49 (Tex.
Crim. App. 1996).  As the finder of fact, the jury is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  The jury is also charged
with reconciling evidentiary conflicts.  Heiselbetz v. State, 906 S.W.2d
500, 504 (Tex. Crim. App. 1995).

The
discrepancies between Tarrant=s
and Mayfield=s
testimony do not undermine our confidence in the jury=s verdict.  Their testimony leading up to
Griffith=s murder was
uniform and was supported by other witness testimony.  Tarrant and Mayfield
both testified that they, along with Vickers, Griffith, and others, met the day
prior to the murder and partied throughout the night.  Both testified that, at
some point, Vickers and Griffith left the party together for a time before
returning to the party.  Fellow party attendees, Smith and Everett Segura,
similarly testified to these events.  There were only a few inconsistencies in
Tarrant=s and Mayfield=s testimony pertaining to
the day of the murder.  Tarrant and Mayfield disagreed as to who was driving,
but both agreed that Griffith flagged them down on their way to feed horses. 
Both witnesses recounted a similar story where Griffith, influenced by drugs,
pointed a magnum rifle at Mayfield.  Tarrant, but not Mayfield, recalled tying
Griffith down with a halter rope.  Both testified similarly concerning the
direction that Vickers and Griffith walked and Vickers=s solo return.  Both also agreed that Vickers
threatened their lives and their families=
lives if they reported Griffith=s
murder.  It was not clearly wrong for the jury to rely on Tarrant=s and Mayfield=s testimony despite the
variations in that testimony.








Vickers
also challenges the sufficiency of the evidence by attacking Tarrant=s and Mayfield=s credibility.  The jury
was aware that Tarrant had a criminal background, was prone to abuse drugs, and
was voluntarily committed to a state mental hospital on two occasions. 
Following a competency hearing by the trial court, the jury also heard Mayfield
testify to a prior brain surgery as well as his resulting speech and memory
problems.  The jury, as the sole judge of witness credibility, was free to
believe all or part of Tarrant=s
and Mayfield=s
testimony.  Its decision to accept at least a portion of their testimony is not
unreasonable, especially when other witness testimony and physical evidence
corroborated their testimony.

We
are also not persuaded by the proposition that Tarrant=s account of Vickers=s efforts to dispose of the body was
completely unreasonable.  Tarrant=s
testimony that Vickers moved a fifty-five gallon barrel by himself is not so
weak as to bar a jury from believing it.

After
reviewing the evidence in a neutral light and giving the jury the appropriate
deference, the jury=s
verdict was neither clearly wrong or manifestly unjust nor against the great
weight and preponderance of the conflicting evidence.  Issue One is overruled.

Accomplices
as a Matter of Law

Vickers
alleges that the trial court erred by instructing the jury on accomplice
witnesses as a matter of fact instead of as a matter of law.  Review of
a jury charge is a two-step process.  King v. State, 189 S.W.3d 347, 362
(Tex. App.CFort Worth
2006, no pet.).  An appellate court must determine if error occurred, and if
error exists, the court will proceed with a harm analysis.  Id.  After
reviewing the accomplice witness rule, we hold that the trial court did not err
and that a harm analysis is unnecessary.

Texas
statutorily requires that, before a conviction is based upon an accomplice
witness=s testimony,
that testimony must be corroborated by independent evidence to connect the
accused with the crime.  Tex.
Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005).  An accomplice is someone who affirmatively acts to
promote or participates with the defendant before, during, or after the
commission of the crime with the required mental state.  Druery v. State,
225 S.W.3d 491, 498 (Tex. Crim. App. 2007).  A witness must be able to be
prosecuted for the offense with which the defendant is charged, or a lesser
included offense, to be an accomplice as a matter of law.  Id.  Mere
presence during the commission of the crime, knowledge of the crime and failure
to disclose it, or even the concealment of the crime is insufficient to render
a person an accomplice.  Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim.
App. 1999).








Here,
neither Tarrant nor Mayfield were accomplices subject to the accomplice witness
rule.  Tarrant had knowledge, which he doubted, that Vickers planned to murder
Griffith, and he later provided a flatbed truck to dispose of the body. 
Mayfield=s only
involvement was that he participated in the burning of Griffith=s personal effects after
the crime had been committed.  The evidence does not show that either witness
actually assisted in murdering Griffith.  Their presence at the scene and their
helping to conceal the crime did not make them accomplices as a matter of law. 
It is irrelevant that the testifying Texas Ranger thought that tampering with
evidence rendered a person an accomplice.  Tarrant and Mayfield were not
accomplices as a matter of law, and the trial court gave the correct
instructions.  Therefore, a harm analysis is irrelevant.  Vickers=s second and third issues
are overruled.

Motion
to Exclude Evidence

Vickers
moved to exclude photographs of Griffith=s
skeletal remains because he claims they were the by-product of a criminal
trespass.  The trial court denied that motion.  Vickers complains on appeal
that this was an abuse of discretion.

If
evidence is obtained by an officer or other person in violation of any
provision of the Constitution or laws of the State of Texas or of the
Constitution or laws of the United States, it is not admissible.  Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005).  By extension, if evidence is obtained by officers as a result
of a criminal trespass, that evidence must be suppressed.  Martin v. State,
67 S.W.3d 340, 344 (Tex. App.CTexarkana
2001, pet. ref=d). 
Criminal trespass occurs when a person enters or remains on property after
being notified that entry is forbidden or received notice to depart but failed
to do so.  Tex. Penal Code
Ann. ' 30.05(a)
(Vernon Supp. 2008).  Written or oral notice, fencing, ANo Trespassing@
signs, purple paint marks on trees or posts, and crop cultivation all
effectively place a person on notice that his entry is forbidden. Tex. Penal Code Ann. ' 30.05(b)(2) (Vernon
Supp. 2008).  When no laws are violated, Article 38.23 is not implicated.  See
Phillips v. State, 161 S.W.3d 511, 515 (Tex. Crim. App. 2005).

The
admissibility of evidence is a matter for the trial court to decide, and the
standard of review is abuse of discretion.  Balentine v. State, 71 S.W.3d
763, 768 (Tex. Crim. App. 2002).  A ruling will not be disturbed unless it
falls outside the zone of reasonable disagreement.  Id.








Here,
the police officers did not commit criminal trespass.  Vickers improperly
relies on the officers=
knowledge that they were on the property and their subsequent conduct in
obtaining written consent from the owner.  The evidence shows that the officers
did not receive written or oral notice to stay off the property, no fencing or
enclosures surrounded the property, signs indicating no trespassing were
nonexistent, and there were no identifying purple marks or visible crops
anywhere.  Without evidence that the officers were affirmatively notified that
entry was forbidden, they could not have committed criminal trespass as a
matter of law.  Accordingly, the trial court did not abuse its discretion in
denying the motion to suppress.

Vickers
briefly mentions that his constitutional Fourth Amendment right to be free from
unreasonable searches and seizures was compromised by the police officers= actions.  Vickers does not
have standing to challenge the officers=
entry onto a third party=s
property.  He did not have an expectation of privacy and cannot complain on the
owner=s behalf.  He
has not attempted to explain to us how his rights have been violated, and we
are convinced no such claim exists.

Since
no violation of any state or federal law occurred in obtaining the skeletal
remains and associated evidence, the trial court did not abuse its discretion
in admitting them.  Vickers=s
final issue is overruled.

Conclusion

The judgment of
the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

September 17, 2009

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J., 

McCall, J., and Strange, J.