GRAVES V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-430-CR

BYRON LAWRENCE GRAVES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON STATE’S PETITION

FOR DISCRETIONARY REVIEW

------------

Pursuant to rule of appellate procedure 50, we have reconsidered our previous opinion on the State’s
 
petition for discretionary review.
(footnote: 2)  
See
 
Tex. R. App. P.
 50.  We withdraw our judgment and opinion dated August 3, 2006 and substitute the following.

Appellant Byron Lawrence Graves appeals his conviction and seventy-seven year sentence for aggravated robbery.  In a single point, appellant contends that the visiting trial court judge committed reversible error by overruling his objection to admission of an extraneous offense at punishment because the State did not provide him notice that it would introduce that offense into evidence, as required by article 37.07, section 3(g) of the code of criminal procedure. 
 Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(g) (Vernon 2006).  We reverse and remand for a new trial on punishment.

Factual and Procedural Background

The State charged appellant in case number 0799290D—the instant case—with the offense of aggravated robbery and in case number 0799500D with the offense of aggravated sexual assault.  The clerk’s record in cause number 0799290D contains a letter from appellant’s counsel indicating that he was representing appellant in several case numbers, including numbers 0799290D and 0799500D.  On June 10, 2002, appellant’s counsel sent a letter to the State, which was filed with the trial court clerk on June 11, 2002, asking the State to notify him pursuant to article 37.07, section 3(g) of its “intent to introduce into evidence during the punishment phase of the above captioned case [which appellant’s counsel referred to only as State of Texas v. Byron L. Graves] any evidence of other crimes, wrongs, or acts other than those arising in the same transaction alleged to have been committed by” appellant.

Nine months later, on March 11, 2003, the State filed a notice under penal code section 3.02 of its intent to consolidate and join numbers 0799290D and 0799500D for trial.  
Tex. Penal Code Ann.
 § 3.02 (Vernon 2003).  However, at a pretrial hearing two days later on March 13, 2003, appellant’s counsel moved to sever numbers 0799290D and 0799500D, and the trial court granted his motion.  The trial court then discussed scheduling trial on number 0799500D, the aggravated sexual assault trial.

At another pretrial hearing on March 20, 2003, the State informed the trial court that the DNA results in number 0799500D would have to be retested because appellant’s counsel would not agree to stipulate to the existing results after receiving a 
Brady
 notice from the State;
(footnote: 3) thus, the State announced that it was ready for trial only on number 0799290D, the aggravated robbery.  Appellant’s counsel announced that he was ready to proceed to trial on the aggravated sexual assault but not the aggravated robbery; however, he agreed to the postponement of the aggravated sexual assault trial.  He then asked for a continuance on number 0799290D, the aggravated robbery, because he and the State had been focusing on the aggravated sexual assault trial and it had been his understanding that the aggravated sexual assault trial would potentially be dispositive of the aggravated robbery trial.  The trial court gave appellant two additional days to prepare for trial on the aggravated robbery, which was to start the next week.

Later that same day, March 20, 2003, the State responded to appellant’s request for notice of extraneous offenses as to number 0799290D
(footnote: 4) and listed seven extraneous offenses that it intended to introduce into evidence pursuant to article 37.07, section 3(g) and rule of evidence 404(b).
(footnote: 5)  The aggravated sexual assault charged in number 0799500D was not listed in the State’s notice.

A jury subsequently convicted appellant of aggravated robbery.  At the punishment phase of that trial, the State called as a witness the complainant in number 0799500D, the unadjudicated aggravated sexual assault case.  Appellant objected on the ground that the State never gave notice of its intent to introduce evidence of the aggravated sexual assault in response to appellant’s request, as required by article 37.07, section 3(g).  The State responded that the aggravated sexual assault was part of the same criminal episode and that appellant could not have been surprised in that appellant’s counsel had known about the aggravated sexual assault charge for over two years because he was representing appellant in several cases, including the aggravated sexual assault case.  The trial court overruled appellant’s objection  and admitted the evidence but granted appellant a running objection to evidence about the aggravated sexual assault. 

Analysis

Appellant’s sole point is that the trial court committed reversible error by admitting evidence of the unadjudicated aggravated sexual assault at punishment because the State did not comply with article 37.07, section 3(g).

Notice of Intent to Introduce Aggravated Sexual Assault Evidence

Article 37.07, section 3(g) provides as follows:

On timely request of the defendant, notice of 
intent to introduce evidence
 under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence.  If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act.

Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(g) (emphasis added).  The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush.  
Burling v. State
, 83 S.W.3d 199, 202-03 (Tex. App.—Fort Worth 2002, pet. ref’d); 
Nance v. State
, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref’d).  The trial court’s decision to admit extraneous offense evidence during punishment is reviewed for an abuse of discretion.  
Sanders v. State
, 191 S.W.3d 272, 276 (Tex. App.—Waco 2006, pet. ref’d); 
Owens v. State
, 119 S.W.3d 439, 444 (Tex. App.—Tyler 2003, no pet.); 
see also Brown v. State
, No. 02-03-00307-CR, 2004 WL 1067774, at *1 (Tex. App.—Fort Worth May 13, 2004, no pet.) (mem. op.) (not designated for publication).  However, in the absence of reasonable notice, a trial court abuses its discretion by admitting extraneous offense evidence.  
Roethel v. State
, 80 S.W.3d 276, 283 (Tex. App.—Austin 2002, no pet.) (“Utterly failing to provide the required notice would automatically render the evidence inadmissible . . . .”); 
see also Owens
, 119 S.W.3d at 444.

Although the State does not concede that it failed to give appellant notice of its intent to introduce the extraneous offense in the aggravated robbery case, it does not argue that it did give such notice.  Its brief merely recites the exchange between appellant’s counsel and the prosecutor and then proceeds to argue that if this court determines that the trial court erred by admitting the evidence, there was no harm.

Our review of the record shows that the State never notified appellant that it intended to introduce evidence of the unadjudicated aggravated sexual assault into evidence at the punishment phase of the aggravated robbery trial.  After the cases were severed according to appellant’s motion,
(footnote: 6) the State filed a notice in number 0799290D only, listing seven specific extraneous offenses that it intended to introduce into evidence in the aggravated robbery trial.  Appellant’s knowledge that number 0799500D was pending is not equivalent to notice that the State intended to introduce the aggravated sexual assault into evidence.
(footnote: 7)  
See Sarringar v. State
, No. 02-02-00102-CR, 2003 WL 861698, at *4 (Tex. App.—Fort Worth Mar. 6, 2003, pet. ref’d) (mem. op.) (not designated for publication) (“Article 37.07, section 3(g) mandates that the State provide timely notice, not of the existence of extraneous offenses, but of its intent to offer such evidence.”); 
see also Hernandez v. State
, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (holding that admissibility of extraneous offense evidence at guilt-innocence is conditioned on State’s compliance with notice requirements of rule 404(b) and citing 
Roethel
 for same proposition as to article 37.07, section 3(g) notice required at punishment).  Indeed, the State’s omission of that unadjudicated extraneous offense from the enumerated list of offenses that it intended to offer in number 0799290D indicates that it did not intend to introduce evidence of the aggravated sexual assault into evidence in the aggravated robbery trial.  
See McDonald v. State
, 179 S.W.3d 571, 577 (Tex. Crim. App. 2005) (holding same in analyzing adequacy of notice under rule 404(b)).  Moreover, because the aggravated sexual assault had not yet been adjudicated, any notice of intent to introduce it into evidence in the aggravated robbery trial was required to include the date, county, and name of the alleged victim to be considered reasonable.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(g).

Our inquiry does not end, however, with a determination that the State did not provide appellant with notice that it intended to introduce evidence of the unadjudicated aggravated sexual assault into evidence at punishment because appellant’s request for notice asked for notice only of extraneous offenses “other than those arising in the same transaction” as the aggravated robbery.
(footnote: 8)  Thus, we must also determine whether the aggravated sexual assault and aggravated robbery arose out of the same transaction.  
See id.
 (requiring that State give notice only upon defendant’s request); 
Sanders
, 191 S.W.3d at 276 (holding that trial court does not abuse its discretion by admitting extraneous offense evidence when defendant fails to ask State for notice of its intent to offer such evidence).

An extraneous offense occurs in the same transaction as another offense and is, thus, admissible when the offenses are “so intermixed or connected as to form a single, indivisible criminal transaction, such that in narrating the one, it is impracticable to avoid describing the other.”  
McDonald
, 179 S.W.3d at 577 (citing 
Rogers v. State
, 853 S.W.2d 29, 33-34 (Tex. Crim. App. 1993)); 
see also King v. State
, 189 S.W.3d 347, 354 (Tex. App.—Fort Worth 2006, no pet.) (holding that extraneous offense is same transaction contextual evidence if it is so intertwined with charged offense that full proof of either cannot be had without eliciting testimony of the other).  Same transaction contextual evidence is admissible “only to the extent that it is necessary to the jury’s understanding of the offense,” that is, “only when the offense would make little or no sense without also bringing in the same transaction evidence.” 
 McDonald, 
179 S.W.3d at 577 (quoting 
Wyatt v. State
, 23 S.W.3d 18, 25 (Tex. 2000)).

Here, the State chose to offer the unadjudicated aggravated sexual assault at punishment rather than guilt-innocence, which alone suggests that the evidence of the aggravated sexual assault was not necessary to the jury’s understanding of the evidence and therefore that the aggravated sexual assault did not occur in the same transaction as the aggravated robbery.

The evidence at guilt-innocence showed that around eleven p.m. on March 7, 2001, appellant furtively approached a man who was sitting inside his truck in the parking lot of a Motel 6.  Appellant put a gun in the man’s ribs and, while pointing the gun at the man, made him get out of the truck.  Appellant then drove off in the man’s truck.  The police chased appellant until the truck’s engine blew up and it coasted to a stop.

Appellant testified that the man sold the truck to him for $1,000.  In rebuttal of appellant’s testimony, the trial court allowed the State to introduce evidence of several extraneous offenses and bad acts showing the events leading up to appellant’s obtaining the truck.  By cross-examining appellant, the State introduced evidence that on the evening of March 6, 2001, appellant had taken a gun from his friend’s truck without permission and had gone to a topless club where he drank whiskey and took cocaine.  Appellant left the club in the early morning hours of March 7, 2001 and sat in front of his estranged wife’s apartment for four hours calling her repeatedly and drinking whiskey.   Appellant testified that he left his estranged wife’s apartment about ten or eleven a.m., drove to Tarrant County College to take a test, and stayed at the school until two or two-thirty p.m.  According to appellant, he then checked into a Motel 6 and stayed there until five or five-thirty p.m.  Appellant admitted that he then went to his estranged wife’s apartment, which he broke into by tricking her into opening the door.  Appellant contended that his estranged wife and her roommate then went with him voluntarily to the motel, but he also admitted that the two women rode in the front seat, and he sat in the back seat with the gun.  Appellant and his estranged wife stayed in the motel room for about four or four-and-a-half hours.  At some point during that time, appellant let the roommate leave with the truck that they drove to the motel in.  After appellant received a phone call from a friend that appellant’s face was “all over” the news and that the police were looking for him, appellant left the motel room and approached the man whom the State alleged appellant robbed. 

At punishment, the State elicited testimony from the aggravated sexual assault complainant
(footnote: 9) that around twelve-thirty p.m. on March 7, 2001, appellant abducted her at gunpoint from the Tarrant County College parking lot and made her drive to a vacant house where he sexually assaulted her.  The complainant’s testimony about the timing of the abduction and assault corresponds with appellant’s prior testimony that he had been at Tarrant County College from about ten or eleven a.m. until two or two-thirty p.m.

Although the unadjudicated aggravated sexual assault took place during the same twenty-four hour period as the aggravated robbery and appeared to be part of a crime spree by appellant while he was drinking and taking drugs, it occurred at a separate location, about ten hours before the aggravated robbery, and was otherwise unrelated to it.  Evidence of the aggravated sexual assault is not necessary to explain the events surrounding the aggravated robbery.  And although the State was able to offer evidence of other extraneous crimes at guilt-innocence to explain appellant’s motive for stealing the truck rather than buying it, evidence of the aggravated sexual assault was not necessary to that explanation either and had not been admitted.  Thus, we conclude and hold that the aggravated sexual assault did not occur in the same transaction as the charged aggravated robbery.

Accordingly, we conclude and hold that the trial court abused its discretion by admitting evidence of the unadjudicated aggravated sexual assault at the punishment phase of appellant’s aggravated robbery trial.

Harm Analysis

Having determined that the trial court abused its discretion by admitting evidence of the unadjudicated aggravated sexual assault, we must next determine whether the error was harmful.  
Tex. R. App. P.
 44.2.  Error in admitting evidence due to insufficient notice under article 37.07, section 3(g) is nonconstitutional error.  
Apolinar v. State
, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), 
aff’d,
 155 S.W.3d 184 (Tex. Crim. App. 2005); 
Roethel
, 80 S.W.3d at 281; 
Brown
, 2004 WL 1067774, at *2; 
see McDonald
, 179 S.W.3d at 578 (reviewing harm for failure to give notice under rule 404(b) in accordance with rule 44.2(b)); 
Hernandez
, 176 S.W.3d at 824-25 (analyzing harm in failure to provide 404(b) notice under rule 44.2(b) and “find[ing] helpful” the article 37.07, section 3(g) test for harm set forth in 
Roethel
).  Therefore, 
we apply rule 44.2(b) and disregard the error if it did not affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

To determine harm in light of the purpose of article 37.07, section 3(g)—to avoid unfair surprise and enable the defendant to prepare to answer the extraneous offense evidence—we must analyze whether and how the notice deficiency affected appellant’s ability to prepare for the evidence.  
Apolinar
, 106 S.W.3d at 414; 
Roethel
, 80 S.W.3d at 281-82; 
Brown
, 2004 WL 1067774, at *2
.
  The Austin Court of Appeals has articulated the following test in 
Roethel
:

[W]e will examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial.  In determining the latter, we will look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence.

80 S.W.3d at 282.
(footnote: 10)  We agree with the Austin Court of Appeals’s reasoning and will follow the same test in assessing harm in this case.
(footnote: 11)  
See Apolinar
, 106 S.W.3d at 414-15; 
Brown
, 2004  WL 1067774, at *2
  (both adopting 
Roethel
 test in article 37.07, section 3(g) cases).

Here, there is some evidence that the lack of notice affected appellant’s ability to cross-examine the aggravated sexual assault complainant and his ability to provide mitigating evidence.  Although appellant indicated at the March 20 pretrial hearing that he was prepared to go forward on the aggravated sexual assault case, the State and appellant both agreed to postpone that trial for the purpose of having the DNA retested.

The complainant in the aggravated sexual assault case testified extensively at punishment in the instant case.  The trial court granted appellant a running objection to her testimony.  During a break in her testimony, appellant’s counsel told the trial court that

in light of the circumstances here, first of all, based on my conversations with the State, it’s my understanding that they weren’t gonna go near this case in this trial.  Now that that’s changed, I am not prepared to conduct an intelligent and effective cross-examination of this witness.  And as such, when the State passes the witness, I will request from the Court that I be allowed to pass the witness for cross-examination at a later time after I’ve secured my files and my notes. 

The State objected to appellant’s request for extra time because the complainant would have to come back the next day and because “he’s [appellant’s counsel] been hired on this case for two years.  And we were set to try this case but for our DNA three days out.”  The State also contended that appellant’s counsel would have adequate time (approximately fifty-two minutes) to look over the complainant’s witness statement before cross-examining her.  The trial court denied appellant’s request.

Thereafter, appellant conducted an extremely brief cross-examination of the complainant consisting of only three questions:  “Ma’am, are you aware of the problems that the State’s having with the DNA testing in this case?,” “When did they inform you of that?,” and “When did they tell you about the problems with the DNA?”

The next day, before appellant introduced his punishment evidence, the State offered, without objection, a copy of appellant’s statement to police regarding the unadjudicated aggravated sexual assault.  The trial court admitted the statement for record purposes only.  In the statement, appellant admitted taking the complainant to an abandoned house and having sex with her, but he claimed that it was consensual.

The State contends that “it is clear that the State’s case [in the aggravated sexual assault trial] was not dependent on the results of the DNA test” because appellant’s statement to police shows that the issue in that trial would be consent.  But if the DNA was not necessary to the State’s case, then it is likewise unclear why the State sought to postpone the aggravated sexual assault trial so that the DNA could be retested.  Regardless of the reason, however, it is clear that postponement of that trial specifically for retesting of the DNA—along with the State’s failure to give notice that it intended to introduce the evidence of the unadjudicated aggravated sexual assault at punishment in the aggravated robbery trial—led appellant to believe that the unadjudicated aggravated sexual assault would not be introduced into evidence in the aggravated robbery trial.  It is a logical inference from the record that the State placed some importance on the DNA test results; otherwise, it would not have postponed the aggravated sexual assault trial to wait for them.

It is apparent that the State was frustrated by its inability to try the aggravated sexual assault case first.  In arguing the admissibility of the aggravated sexual assault evidence, the prosecutor stated, 

The case we want to try, the one we really wanted to try was this case, the rape of the girl off the campus.  And that’s what we prepared for, that’s what everybody went forward for.

So we didn’t list it on our original notices,[
(footnote: 12)] no, because, Judge, that’s the case we were going to try.  We got Shanghai’d three days out by the postponement from the lab.  So we have to switch yet to another case.  And for him to say, oh, wait a minute, you’ve got to turn around and tell me an offense committed in the same criminal episode I’ve got to give you notice of, that would be absolutely ridiculous.

Later, the prosecutor stated,

We were trying this case all the time for the last eight months, up until we got hijacked three days ago.  This -- the case I’m interested in using in punishment right now is the aggravated sexual assault case that he and I have been discussing since last June.  That’s exactly what we were gonna try . . . .

In its brief on original submission, the State contended that “it strains credulity” to conclude that appellant was surprised by its offer of the aggravated sexual assault at the punishment phase because appellant’s counsel was representing him on that charge and it had been pending for over two years.
(footnote: 13)  But as we noted above, appellant’s knowledge that the charge was outstanding is hardly equivalent to knowledge that the State would offer evidence of it at punishment on the aggravated robbery, especially when the State—not appellant—postponed trial of the aggravated sexual assault for retesting of the DNA.
(footnote: 14)  And appellant’s counsel made his surprise clear on the record.
(footnote: 15)
 We agree that the record shows that appellant should not have been surprised by the actual substance of the complainant’s testimony.  Appellant’s counsel announced at the March 20 pretrial hearing that he was prepared to try the aggravated sexual assault.  And although it is not clear whether appellant’s counsel was aware of appellant’s statement to police, appellant should have been aware of it.

The surprise component of the harm analysis in this case appears to turn on the significance of the State’s articulated purpose for postponing the aggravated sexual assault trial:  retesting the DNA.  If the State’s case was not “dependent on the results of the DNA test,” as the State claims in its petition for discretionary review, why postpone the trial to retest that evidence?  And although here appellant did not object to the admission of his statement to police “for record purposes” at punishment, there is no indication as to whether this statement would have been admissible at the aggravated sexual assault trial.  In one of his pretrial motions, appellant requested a 
Jackson v. Denno
 hearing before the introduction of any statements and asked that any such statement be suppressed if the trial court determined that it was involuntary, coerced, or made without a waiver of appellant’s constitutional rights.  378 U.S. 368, 84 S. Ct. 1774 (1964).

The facts of this case are unique.  There is no direct evidence of the State’s intent regarding the failure to give appellant notice, and appellant should have been aware of the substance of the aggravated sexual assault complainant’s testimony as well as the content of his prior statement to police.  But the record shows that because of the State’s postponement of the aggravated sexual assault trial for the express purpose of retesting the DNA, appellant was unprepared to cross-examine the complainant about anything other than a potential problem with the DNA.  There is nothing in the record to indicate that appellant’s cross-examination of the complainant was merely strategic; appellant’s counsel specifically asked the trial court for more time to obtain his notes and files.  And it appears that appellant relied on the significance of the retesting of the DNA and the State’s unpreparedness on that aspect of the case in formulating his cross-examination of the complainant.  Although these considerations do not fit neatly within the 
Roethel
 test, we believe that they comport with its purpose and show that the deficient notice in this case prevented appellant from fully preparing for the trial on punishment.

Based on the foregoing,
(footnote: 16) we cannot conclude that the trial court’s error did not affect appellant’s substantial rights.  
See
 
Tex. R. App. P.
 44.2(b).  Accordingly, we sustain appellant’s sole point.

Conclusion

Having sustained appellant’s sole point, we affirm the trial court’s judgment of conviction but we reverse the trial court’s judgment as to punishment and remand this case for a new trial on punishment.

PER CURIAM

PANEL F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 2, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The State did not file a motion for rehearing, but the court of criminal appeals granted it an extension of time to file a petition for discretionary review.

3:
On March 19, 2003, the State filed a Notice of 
Brady
, in which it disclosed to appellant’s counsel that Phillip Aviles with the Fort Worth Police Department Crime Lab had determined that there was “a question with the proficiency” of the scientist who performed the DNA analysis in this case.  The notice further stated that “[a] review of this particular case has not been done and a panel will convene to determine if testing was proper in this case.  However, it becomes necessary to retest the samples by another forensic scientist.”

4:
The State’s notice specifically references only number 0799290D at the top of the page. 

5:
It does not appear from the record that appellant had received the State’s notice of extraneous offenses when he asked for the continuance at the pretrial hearing earlier that day.  The pretrial hearing began at 9:30 a.m. and ended at 10:28 a.m.  The notice of extraneous offenses is stamped at 11:30 a.m. on March 20, and the certificate of service indicates that it was sent to appellant’s counsel by facsimile.

6:
The State had filed a notice to consolidate the two cases only two days before appellant’s motion to sever.

7:
As appellant’s counsel informed the trial court, “[I]t requires more than our knowing the case exists.  It requires specific knowledge that they intend to use the case in the trial.” 

8:
Rule of evidence 404(b), which applies at guilt-innocence, relieves a party from giving notice if the evidence relates to a crime, wrong, or act “other than that arising in the same transaction.”  
Tex. R. Evid.
 404(b).

9:
The complainant in the aggravated sexual assault was not appellant’s estranged wife; she had never previously met appellant. 

10:
The court of criminal appeals found this test helpful in assessing harm in a case in which the State had failed to provide any notice under rule 404(b) of intent to introduce evidence of an extraneous offense at guilt-innocence.  
Hernandez
, 176 S.W.3d at 824-25.  

11:
In its petition for discretionary review, the State claims that this court erroneously adopted and utilized the bad faith component of the 
Roethel
 test rather than focusing on 
Roethel
’s “overall approach to a 44.2(b) analysis,” which is to determine whether article 37.07, section 3(g)’s purpose of preventing surprise has been frustrated.  However, the State did not make this argument on submission of this case; instead, it specifically addressed the bad faith component of the 
Roethel
 test in its brief, concluding that “there is 
nothing
 in the record which would demonstrate bad faith by the State.”  [Emphasis added.]  Regardless, our harm analysis is not based on that component of the 
Roethel
 test.

12:
We note that the first and only notices appearing in the record as to number 0799290D were filed and served on appellant after the March 20 pretrial hearing at which the parties agreed to postpone the aggravated sexual assault trial. 

13:
We note that appellant’s request for notice of extraneous offenses in number 0799290D, the aggravated robbery, had been pending for nine months—and had not been responded to by the State—before the State gave notice of its intent to try the two cases together on March 11, 2003.  We cannot determine from the record whether appellant knew about the State’s intent to try the cases together before that time.  The State notified appellant of its intent to offer extraneous offenses other than the aggravated sexual assault on March 20, 2003, after the trial court granted appellant’s motion to sever the two cases.

14:
Although it is not clear what defense strategy appellant would employ in the trial of the aggravated sexual assault in light of the consent issue, due to the technical nature of DNA evidence—if appellant chose to attack that evidence—appellant would presumably need time to study, prepare, and secure experts not only as to the retested DNA, but also as to the first DNA test results and why there were problems with those results.

15:
Appellant’s counsel specifically asked to postpone cross-examination of the complainant until after he had “secured [his] files and . . . notes.”

16:
We further note that although the prosecutors did not overly emphasize the aggravated sexual assault in their closing arguments, evidence of the aggravated sexual assault made up the bulk of the State’s evidence at punishment.