**Opinion filed September 17, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-08-00086-CR

———————

## UGENE WILLIAM VICKERS, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**
**Throckmorton County, Texas**
**Trial Court Cause No. 1205**

## MEMORANDUM OPINION

The jury convicted Ugene William Vickers of murder, assessed his punishment at twenty-five years confinement, and imposed a $10,000 fine. We affirm.

*Background Facts*

Quentin Tarrant testified that the victim, Sheryl Kay Griffith, went to Jayton, Texas, to get away from her involvement with drugs in Abilene. Griffith met Vickers a few days later at Samuel Smith's horse pens. Tarrant testified that several friends, including Griffith, Vickers, Red Mayfield, and himself, gathered there to drink beer. The party eventually moved to Tarrant's apartment where drugs were used. At one point, Vickers and Griffith left the party together and returned sometime later.

The next morning, Tarrant, Mayfield, and Vickers were leaving to feed Tarrant's horses when Griffith flagged them down so that she could join them. At the farm, Griffith and Vickers went to

the tack room to use drugs. Mayfield and Tarrant testified that Griffith began acting wild and crazy. An argument occurred when she grabbed Mayfield's hat. Later, she grabbed a magnum rifle from Tarrant's pickup and pointed it at Mayfield. The gun was successfully removed from Griffith and locked in the pickup. Tarrant testified that the group tied Griffith up with a halter rope for a while. Vickers told Tarrant that he was going to kill Griffith. Vickers walked off with Griffith following him. After a while, he returned alone. Vickers told Tarrant and Mayfield that he killed Griffith. The group then burned Griffith's personal effects, including her purse. On their return to town, Vickers threatened Tarrant and Mayfield with their lives and their families' lives if they told anyone about the murder.

Tarrant did not want Griffith's body on his property, and he asked Vickers to move it. Tarrant testified that he loaned Vickers his flatbed truck and went with him to make sure that Vickers did in fact move the body. He watched as Vickers loaded the body into a fifty-five gallon barrel, rolled the barrel up a hill, and placed it on the flatbed truck. Vickers drove off with the barrel and returned the next morning in Don Long's pickup. Vickers told Tarrant that the flatbed truck got stuck and drove him to its location. Eventually, they got the flatbed truck unstuck.

Five years later, Tarrant described this incident to police officers and took them to the location where Vickers got stuck. The officers searched the area and found Griffith's skeletal remains in a nearby cistern. Dr. Kathleen Nichols and Dr. Robert R. Paine from the Lubbock Medical Examiner's office examined the remains. At trial, they testified that the cause of Griffith's death was undetermined but that it was probably due to homicidal violence.

### Issues

Vickers challenges his conviction with four issues. First, he asserts that the evidence was factually insufficient to sustain the jury's guilty verdict. In his next two issues, he complains that the trial court erred by not charging the jury at the guilt/innocence phase that two witnesses were accomplices as a matter of law. Finally, he alleges that the trial court abused its discretion by denying Vickers's motion to exclude evidence he claims was illegally obtained.

### Factual Sufficiency

Vickers argues that the evidence is factually insufficient. Specifically, he claims that the verdict is clearly wrong and manifestly unjust because the testimony of Tarrant and Mayfield was so weak that a jury could not rationally rely on it. Vickers directs us to several discrepancies between

the two witnesses' testimony, the general unreliability of the two, and the high improbability of some of Tarrant's testimony.

In a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Appropriate deference must be given to the jury's determination, especially concerning its judgment on the weight and credibility of witness testimony. *Jones v. State*, 944 S.W.2d 642, 648-49 (Tex. Crim. App. 1996). As the finder of fact, the jury is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). The jury is also charged with reconciling evidentiary conflicts. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

The discrepancies between Tarrant's and Mayfield's testimony do not undermine our confidence in the jury's verdict. Their testimony leading up to Griffith's murder was uniform and was supported by other witness testimony. Tarrant and Mayfield both testified that they, along with Vickers, Griffith, and others, met the day prior to the murder and partied throughout the night. Both testified that, at some point, Vickers and Griffith left the party together for a time before returning to the party. Fellow party attendees, Smith and Everett Segura, similarly testified to these events. There were only a few inconsistencies in Tarrant's and Mayfield's testimony pertaining to the day of the murder. Tarrant and Mayfield disagreed as to who was driving, but both agreed that Griffith flagged them down on their way to feed horses. Both witnesses recounted a similar story where Griffith, influenced by drugs, pointed a magnum rifle at Mayfield. Tarrant, but not Mayfield, recalled tying Griffith down with a halter rope. Both testified similarly concerning the direction that Vickers and Griffith walked and Vickers's solo return. Both also agreed that Vickers threatened their lives and their families' lives if they reported Griffith's murder. It was not clearly wrong for the jury to rely on Tarrant's and Mayfield's testimony despite the variations in that testimony.

Vickers also challenges the sufficiency of the evidence by attacking Tarrant's and Mayfield's credibility. The jury was aware that Tarrant had a criminal background, was prone to abuse drugs, and was voluntarily committed to a state mental hospital on two occasions. Following a competency hearing by the trial court, the jury also heard Mayfield testify to a prior brain surgery as well as his resulting speech and memory problems. The jury, as the sole judge of witness credibility, was free

3

to believe all or part of Tarrant's and Mayfield's testimony. Its decision to accept at least a portion of their testimony is not unreasonable, especially when other witness testimony and physical evidence corroborated their testimony.

We are also not persuaded by the proposition that Tarrant's account of Vickers's efforts to dispose of the body was completely unreasonable. Tarrant's testimony that Vickers moved a fifty-five gallon barrel by himself is not so weak as to bar a jury from believing it.

After reviewing the evidence in a neutral light and giving the jury the appropriate deference, the jury's verdict was neither clearly wrong or manifestly unjust nor against the great weight and preponderance of the conflicting evidence. Issue One is overruled.

*Accomplices as a Matter of Law*

Vickers alleges that the trial court erred by instructing the jury on accomplice witnesses as a matter of fact instead of as a matter of law. Review of a jury charge is a two-step process. *King v. State*, 189 S.W.3d 347, 362 (Tex. App.—Fort Worth 2006, no pet.). An appellate court must determine if error occurred, and if error exists, the court will proceed with a harm analysis. *Id.* After reviewing the accomplice witness rule, we hold that the trial court did not err and that a harm analysis is unnecessary.

Texas statutorily requires that, before a conviction is based upon an accomplice witness's testimony, that testimony must be corroborated by independent evidence to connect the accused with the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). An accomplice is someone who affirmatively acts to promote or participates with the defendant before, during, or after the commission of the crime with the required mental state. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). A witness must be able to be prosecuted for the offense with which the defendant is charged, or a lesser included offense, to be an accomplice as a matter of law. *Id*. Mere presence during the commission of the crime, knowledge of the crime and failure to disclose it, or even the concealment of the crime is insufficient to render a person an accomplice. *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999).

Here, neither Tarrant nor Mayfield were accomplices subject to the accomplice witness rule. Tarrant had knowledge, which he doubted, that Vickers planned to murder Griffith, and he later provided a flatbed truck to dispose of the body. Mayfield's only involvement was that he participated in the burning of Griffith's personal effects after the crime had been committed. The evidence does not show that either witness actually assisted in murdering Griffith. Their presence at the scene and

4

their helping to conceal the crime did not make them accomplices as a matter of law. It is irrelevant that the testifying Texas Ranger thought that tampering with evidence rendered a person an accomplice. Tarrant and Mayfield were not accomplices as a matter of law, and the trial court gave the correct instructions. Therefore, a harm analysis is irrelevant. Vickers's second and third issues are overruled.

*Motion to Exclude Evidence*

Vickers moved to exclude photographs of Griffith's skeletal remains because he claims they were the by-product of a criminal trespass. The trial court denied that motion. Vickers complains on appeal that this was an abuse of discretion.

If evidence is obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States, it is not admissible. TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). By extension, if evidence is obtained by officers as a result of a criminal trespass, that evidence must be suppressed. *Martin v. State*, 67 S.W.3d 340, 344 (Tex. App.—Texarkana 2001, pet. ref'd). Criminal trespass occurs when a person enters or remains on property after being notified that entry is forbidden or received notice to depart but failed to do so. TEX. PENAL CODE ANN. § 30.05(a) (Vernon Supp. 2008). Written or oral notice, fencing, "No Trespassing" signs, purple paint marks on trees or posts, and crop cultivation all effectively place a person on notice that his entry is forbidden. TEX. PENAL CODE ANN. § 30.05(b)(2) (Vernon Supp. 2008). When no laws are violated, Article 38.23 is not implicated. *See Phillips v. State*, 161 S.W.3d 511, 515 (Tex. Crim. App. 2005).

The admissibility of evidence is a matter for the trial court to decide, and the standard of review is abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). A ruling will not be disturbed unless it falls outside the zone of reasonable disagreement. *Id*.

Here, the police officers did not commit criminal trespass. Vickers improperly relies on the officers' knowledge that they were on the property and their subsequent conduct in obtaining written consent from the owner. The evidence shows that the officers did not receive written or oral notice to stay off the property, no fencing or enclosures surrounded the property, signs indicating no trespassing were nonexistent, and there were no identifying purple marks or visible crops anywhere. Without evidence that the officers were affirmatively notified that entry was forbidden, they could

5

not have committed criminal trespass as a matter of law. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress.

Vickers briefly mentions that his constitutional Fourth Amendment right to be free from unreasonable searches and seizures was compromised by the police officers' actions. Vickers does not have standing to challenge the officers' entry onto a third party's property. He did not have an expectation of privacy and cannot complain on the owner's behalf. He has not attempted to explain to us how his rights have been violated, and we are convinced no such claim exists.

Since no violation of any state or federal law occurred in obtaining the skeletal remains and associated evidence, the trial court did not abuse its discretion in admitting them. Vickers's final issue is overruled.

*Conclusion*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


September 17, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.