

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MATTHEW CASAUS, | § | |
| | | No. 08-12-00152-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 362nd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Denton County, Texas |
| Appellee. | § | |
| | | (TC# F-2011-0123-D) |
| | § | |

## **O P I N I O N**

Appellant Matthew Casaus pleaded guilty to one count of aggravated robbery, one count of aggravated kidnapping, and pleaded true to one enhancement paragraph. TEX. PENAL CODE ANN. §§ 20.04, 29.03 (West 2011). After a trial on punishment, a jury sentenced Appellant to sixty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises five issues on appeal. We affirm the judgment as modified.

### BACKGROUND

On December 16, 2010, around 1:30 a.m., Eileen Loskot left her office near downtown Dallas, Texas to return to her home in Double Oak, Texas.[1] While traveling on I-35 in a Toyota

---

[1] As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

Corolla, Nathaniel Williams, Eddie Muckelroy, and Appellant spotted Eileen alone in her Infinity G35 sports car and followed her as she exited the interstate near her home. Shortly thereafter, the Corolla rear-ended Eileen's vehicle. Eileen pulled over and began looking through her wallet for her insurance information while she unsuccessfully attempted to call her husband Gary Loskot on his cell phone and their home phone. Appellant, Williams, and Muckelroy got out of their vehicle and approached Eileen's vehicle. Muckelroy pointed a gun at Eileen, and the men instructed her to get out the vehicle and hand over her phone.

Eileen complied with the command but while attempting to get out of her car, Appellant grabbed Eileen by her coat and jerked her out of the driver's seat causing her to fall, scrape her knee, and lose her glasses on the street. Appellant then pushed Eileen into the backseat of her car, and Muckelroy got into the backseat next to her holding the gun. Williams drove Eileen's car and Appellant returned to the Corolla. At trial, Eileen testified that during the exchange, Appellant spoke in a loud and angry tone, and used profane language, while Muckelroy and Williams did not speak as harshly. Eileen felt terrified throughout the experience.

As he drove near the scene, Double Oak Police Officer Blake Ringberg witnessed both vehicles commit traffic violations as they drove away in opposite directions. Officer Ringberg had a better opportunity to safely conduct a traffic stop of the Corolla, and pulled Appellant over while the Infinity continued to drive away. Officer Ringberg observed Appellant alone in the vehicle and Appellant explained calmly and politely that he and his friends had just picked up his grandmother to take her home after she had been drinking. Officer Ringberg issued Appellant a written warning and sent him on his way.

Meanwhile in Eileen's vehicle, Williams and Muckelroy took control of Eileen's purse

2

and phone and urged her to calm down and cooperate by driving them to an ATM where she withdrew $300 from her account, and to a gas station to fill up her vehicle's fuel tank using her credit card. Williams and Muckelroy then instructed Eileen to stop in an alley and gave her the choice of riding in the trunk or in the backseat while they drove somewhere "scary," where she "wouldn't want to be seen." Scared, and trusting the men's representation that being inside the car could be dangerous for her, Eileen climbed into the trunk of her car. Williams and Muckelroy then drove for approximately fourteen hours with occasional stops but never checked on Eileen or let her out of the trunk. Eileen had no food and only half of a bottle of water during the fourteen-hour drive. She remained cold and terrified the whole time.

When Williams and Muckelroy finally allowed Eileen out of the trunk, she saw a lot of snow on the ground and discovered they were in the woods in New Mexico. Because the car had gotten stuck in the snow, Eileen assisted by driving while Williams and Muckelroy pushed the car out of the snow. Williams then directed Eileen to a location in Albuquerque, gave her some cash for gas, told her not to make any phone calls until she got out of New Mexico, and let her drive away. Williams and Muckelroy did not return Eileen's belongings to her. Eileen stopped and called Gary from a pay phone before continuing to drive east, back to Texas. Near Amarillo, a DPS patrol car stopped Eileen and the officer informed Eileen that authorities had been looking for her after Gary reported her missing that morning. The authorities took Eileen to a local hospital to be examined. She was given fresh clothes and then taken to a motel where she reunited with her husband.

When Gary awoke the morning after Eileen's kidnapping, he saw a missed call on his cell phone from her and heard a voicemail she left on their home answering machine. The call

Eileen made to the Loskot home had not been terminated when she gave her abductors the phone, but had left a voicemail recording at the beginning of her kidnapping. Gary listened to the voicemail and heard Eileen being threatened by unknown male voices and Eileen sounding very scared and anxious. After hearing the message, Gary called 911 to report the kidnapping. Double Oak police officers responded to the home and determined the voicemail indicated that Eileen had been taken against her will. An investigation uncovered the time and location from where Eileen's cell phone left the voicemail, and that information along with the description of Eileen's car led Officer Ringberg to inform his superior officer about the traffic stop he conducted on the Corolla.

Investigators used the written citation Officer Ringberg issued to Appellant to locate Appellant and bring him in for questioning. At the beginning of his interview,[2] Appellant maintained he, Williams, and Muckelroy had picked up his grandmother from a Christmas party because she had been drinking. After forty minutes and after hearing the voicemail, Appellant changed his story and began to offer information regarding Williams' and Muckelroy's plans to drive to California, and their possible route for getting there. During the interview, Appellant claimed Muckelroy was in charge of the carjacking scheme and that Williams and Muckelroy had decided to bump Eileen's car.

Tracy Murphree, the Texas Ranger interviewing Appellant, testified that while Appellant claimed the other two instigated the scheme, Appellant seemed to Murphree to be more concerned with protecting himself than with what would happen to Eileen. Appellant expressed concern of going to a Texas prison as well as the length of sentence he would receive based on

---

[2] The State published the video recording of the interview to the jury. However, it is not a part of the record on appeal. Therefore evidence of the interview is limited to the testimony of the investigators at trial.

his criminal history. During the interview, Appellant stated Williams and Muckelroy were scheduled to call and check in with him every few hours.

In addition to evidence regarding the robbery and kidnapping of Eileen, the State also presented evidence of Appellant's criminal history in New Mexico, as well as his propensity towards violence. After the State rested, Appellant chose not to present any evidence or call any witnesses in his defense. The jury sentenced Appellant to sixty years' confinement.

## DISCUSSION

Issues One, Two, Three, and Four pertain to the following portion of Eileen's testimony regarding a statement made by Williams.

> Q: And as you're in the backseat of that car heading southbound on I-35, did they [the co-defendants] ever have a chance to mention Mr. Casaus?
>
> A: Yes, sir.
>
> Q: And how did they mention him?
>
> A: They said, did you see how that other guy was – and I don't have the exact words, I'm sorry – to the effect of, did you see how he was? Be glad he's not in the car with us, that if I cooperated, they wouldn't hurt me and eventually I would go home with my husband.

### Admission of the Statement

Because Issues One and Two are related, we address them together. In Issue One, Appellant claims error in the trial court's admission of the statement made by a co-defendant when no exception to the prohibition against hearsay applies. In Issue Two, Appellant argues the trial court's erroneous admission of the statement affected Appellant's substantial rights within the meaning of Rule 44.2(b) of the Texas Rules of Appellate Procedure.

*Standard of Review*

5

We will not reverse a trial court's decision to admit evidence absent an abuse of discretion. *See Hernandez v. State*, 390 S.W.3d 310, 324 (Tex.Crim.App. 2012), *cert. denied*, 134 S.Ct. 823, 187 L.Ed.2d 685 (2013). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*; *Walters v. State,* 247 S.W.3d 204, 217 (Tex.Crim.App. 2007). The admissibility of an out-of-court statement under an exception to the hearsay rule is a decision that lies within the discretion of the trial court. *Taylor v. State,* 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

Hearsay is any statement offered into evidence to prove the truth of the matter asserted that is not made by the declarant while testifying at a trial or hearing. TEX. R. EVID. 801(d). Hearsay statements are inadmissible unless an exception provided by statute or the rules of evidence applies. TEX. R. EVID. 802. Statements made by a co-conspirator or party to the offense during the course of or in furtherance of the conspiracy are not considered hearsay under Texas Rule of Evidence 801. TEX. R. EVID. 801(e)(2)(E). A statement made to further a conspiracy includes any statement made (1) with the intent to induce another to interact with co-conspirators or to cooperate with or assist co-conspirators in any way; (2) with intent to induce another to join the conspiracy; (3) while formulating future strategies to conceal or benefit the conspiracy; (4) with intent to induce continued involvement in the conspiracy; or (5) to identify the role of one conspirator to another. *King v. State*, 189 S.W.3d 347, 360 (Tex. App.—Fort Worth 2006, no pet.). Statements which are not made in the furtherance of a conspiracy and therefore, remain inadmissible hearsay include statements which are (1) casual admissions of involvement in the conspiracy to a person the declarant individually trusted; (2) mere narrative descriptions; (3) mere conversations between conspirators; or (4) "puffing" or

6

"boasting" by co-conspirators. *Id.*

The erroneous admission of inadmissible hearsay is an error which lacks constitutional dimension. *Taylor*, 268 S.W.3d at 592. Therefore, the error is evaluated for harm under Rule 44.2(b) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(b) (non-constitutional error which does not affect substantial rights must be disregarded). We review the record as a whole to determine whether or not the error had a substantial or injurious effect on the jury's determination. *Taylor*, 268 S.W.3d at 592. If our examination of the record assures that the error had but a slight effect, than the judgment is upheld. *Id.*

*Analysis*

The trial court held a hearing outside the presence of the jury on the admission of the statement at issue. At the hearing, the State argued the statement qualifies as a co-conspirator statement because the declarant said it in furtherance of the conspiracy. The trial court heard testimony by Eileen indicating Williams made the statement within the first twenty to thirty minutes of the carjacking, while Eileen was in the backseat with Muckelroy and before they instructed her to drive her car to an ATM and to the gas station. Eileen specifically testified that Williams made the statement while attempting to calm her down and get her to cooperate.

Defense counsel argued the statement does not meet the criteria of a co-conspirator statement but rather is a self-serving, blame-shifting statement and is therefore inadmissible under the statement against self-interest exception. Defense counsel also argued the statement had more prejudicial than probative value because it is, "not being probative into the character of the Defendant, other than a statement by a co-defendant who is using that to control the witness and exert power . . . over the victim[.]" The trial court overruled defense counsel's objection to

7

the admission of the statement but did not specify on which grounds it found the statement to be admissible.

On appeal, Appellant maintains his argument that the statement is neither a co-conspirator statement nor statement against penal interest, but rather a blame-shifting statement and therefore inapplicable to either hearsay exception. TEX. R. EVID. 801(e)(2)(E); TEX. R. EVID. 803(24). Appellant claims it cannot be a co-conspirator statement because at the time Williams said it, Appellant was no longer a part of any alleged conspiracy. The State maintains the trial court properly admitted the statement because it is a co-conspirator statement and therefore, it is not hearsay. The State directs us to the facts presented in the hearing outside the presence of the jury as well as to Eileen's testimony at trial regarding the events leading up to the statement being made.

Q: Eileen, I want to take you back to the recording . . . there was some talk about, you know, cooperate with us and you'll be okay.

A: Yes, sir.

Q: Is that right?

A: Yes, sir.

Q: And with regards to that line of conversation, they – and when I say, they, at this point, it's Williams and Muckelroy in the car?

A: Yes, sir.

Q: Are they trying to calm you down?

A: Yes, sir.

Q: And trying to get information from you?

A: Yes, sir.

Q: And as you're in the backseat of that car heading southbound on I-35, did they ever have a chance to mention Mr. Casaus?

A: Yes, sir.

Q: And how did they mention him?

A: They said, did you see how that other guy was – and I don't have the exact words, I'm sorry—to the effect of, did you see how he was?   Be glad he's not in the car with us, that if I cooperated, they wouldn't hurt me and eventually I would go home with my husband.

A review of the record clarifies that Williams made the statement within the first twenty to thirty minutes of the carjacking, in furtherance of the conspiracy to rob Eileen of the money she later withdrew from the ATM and the money she used to purchase gas, to continue to use her vehicle to travel to New Mexico, and to kidnap her in the process.   TEX. R. EVID. 801(e)(2)(E). While Appellant may not have been present after the initial carjacking, he pleaded guilty to the offenses of aggravated robbery and aggravated kidnapping, thus admitting all elements of each offense through the entirety of its commission.   *See Crawford v. State,* 617 S.W.2d 925, 929 (Tex.Crim.App. 1980) (appellant's plea of guilty admits all elements of the offense and is conclusive of appellant's guilt).

While the statement vaguely refers to Appellant, the record supports the conclusion that Williams made the statement with an intent to induce Eileen to cooperate in the furthering of the crime by driving her car, withdrawing cash at an ATM, and using her credit card to get gas. *King*, 189 S.W.3d at 360.   Therefore, its admission lies within the zone of reasonable disagreement and the trial court did not abuse its discretion by admitting it.   *Hernandez*, 390 S.W.3d at 324.   As the trial court's determination that the co-conspirator statement is not hearsay is correct under that particular theory of applicable law, we need not address Appellant's

9

argument that the statement does not fall under the statement against interest hearsay exception. *Walters,* 247 S.W.3d at 217. Issue One is overruled.

Furthermore, even if we had found error in the trial court's admission of the statement, the error would have been harmless. In Issue Two, Appellant argues his substantial rights were affected when the State emphasized the statement during closing arguments to show Appellant was the most violent of the three, the person calling the shots, and that Williams and Muckelroy were merely following his instructions. The State counters that it only mentioned the statement one time during closing arguments and the statement was only one small piece of evidence in support of the conclusion that Appellant was the leader and the most violent of the three men.

The State emphasized several other pieces of evidence to support its assertion of Appellant's position as the leader and most violent of the three co-defendants. The jury heard the voicemail of the initial part of the kidnapping which recorded Appellant sounding harsh and aggressive whereas, Muckelroy sounded calm and more polite. Eileen testified Appellant grabbed her and jerked her out of her car, causing her to fall and scrape her knee and then ordered her into the backseat. At twenty-three, Appellant was the oldest of the three men at the time of the offense. Williams and Muckelroy were seventeen and nineteen years' old respectively. Williams and Muckelroy had scheduled calls to check in with Appellant every few hours. Appellant's criminal history indicated a propensity towards violence, including a conviction of criminal sexual penetration. While jailed and awaiting trial, Appellant became agitated and aggressive. He asked officers, "What would I get for assaulting a CO [corrections officer]," and punched a corrections officer in the head.

We disagree with Appellant's assertion that the State emphasized the statement during its

10

closing arguments and affected his substantial rights. The State briefly paraphrased the statement during its rebuttal of Appellant's closing arguments, and focused more on other evidence in support of its case. After our review of the entire record, had the admission of the statement been error, we conclude it would not have had a substantial or injurious effect on the jury's determination of Appellant's sentence. *Taylor*, 268 S.W.3d at 592. Our examination of the record assures that even if error occurred, it had but a slight effect and would not warrant reversal. *Id.* Issue Two is overruled.

### Confrontation

In Issue Three, Appellant asserts the trial court violated his Sixth Amendment Constitutional right to confront and cross-examine witnesses against him by admitting the statement at issue. In Issue Four, Appellant argues it cannot be determined beyond a reasonable doubt that the confrontation error did not contribute to his punishment, therefore reversal is required. We address these issues together.

### *Standard of Review*

The Sixth Amendment of the United States Constitution affords each criminal defendant the right, "to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. A defendant's confrontation right is violated when a trial court admits a hearsay statement made by a non-testifying declarant if the statement was testimonial and the defendant had no prior opportunity to cross-examine the declarant. *See Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). While the Supreme Court has declined to set forth a comprehensive definition of testimonial statements, it has identified three types of statements regarded as testimonial. *Crawford*, 541 U.S. at 51-52; *Wall v. State*, 184 S.W.3d 730, 735

11

(Tex.Crim.App. 2006). These include in-court testimony or its functional equivalent, extrajudicial statements contained in formal testimonial documents, and any statement made under circumstances leading an objective witness to reasonably believe the statement would be available for use at a later trial. *Crawford*, 541 U.S. at 51-52; *Wall*, 184 S.W.3d at 735. Co-conspirator statements are by their nature, non-testimonial. *Crawford*, 541 U.S. at 56; *King*, 189 S.W.3d at 358. We review *de novo* the determination of whether or not a statement is testimonial. *See Wall*, 184 S.W.3d at 742.

A violation of the Confrontation Clause is constitutional error and requires reversal unless the reviewing court can determine beyond a reasonable doubt that the error did not contribute to the defendant's conviction or punishment. TEX. R. APP. P. 44.2(a). In determining if the error was harmless, reviewing courts should consider the importance of the hearsay statement to the State's case, whether the hearsay evidence was cumulative of other evidence, the absence or presence of evidence either contradicting or corroborating the hearsay statement on material points, and the overall strength of the case against the defendant. *Davis v. State,* 203 S.W.3d 845, 852 (Tex.Crim.App. 2006). We may also consider other factors contained in the record that shed light on the likely impact of the error on the mind of an average juror. *Id.* The error is harmless when the reviewing court is convinced beyond a reasonable doubt that the barred statement would probably not have had a significant impact on the mind of an average juror in making their determination. *Id.*

*Analysis*

Having already determined the statement at issue constitutes a co-conspirator statement, it is therefore non-testimonial and its admission did not violate Appellant's right to

12

confrontation. *Crawford,* 541 U.S. at 56; *King*, 189 S.W.3d at 358. However, even assuming it is not a co-conspirator statement, it would still fail to fall within one of the three categories of testimonial statements. *See Crawford*, 541 U.S. at 51-52. Williams' remarks to Eileen shortly after the carjacking are not court testimony or its functional equivalent, nor extrajudicial statements contained in formal testimonial documents. *Crawford*, 541 U.S. at 51-52; *Wall*, 184 S.W.3d at 735. Appellant argues the statement is testimonial because an objective witness would reasonably believe under the circumstances that the statement would be available for use at a trial against Appellant. *Crawford*, 541 U.S. at 51-52; *Wall*, 184 S.W.3d at 735. We disagree.

Nothing in the context of the statement made by Williams to Eileen while taking her from the scene of the carjacking to an ATM to withdraw cash and then to a gas station, indicates that a reasonably objective witness would have believed the statement would be used at a later trial against Appellant. *See Orona v. State*, 341 S.W.3d 452, 463 (Tex. App.—Fort Worth 2011, pet. ref'd)(nothing in the context of statements made by co-conspirator to acquaintances regarding attempts to conceal the victim's body would lead an objective witness to reasonably believe the statements would be used at trial); *Curry v. State*, 228 S.W.3d 292, 299 (Tex. App.—Waco 2007, pet. ref'd)(statements made during the course of a drug transaction would not lead an objective witness to reasonably believe they would be available for use at trial). The admission of the non-testimonial, co-conspirator statement did not violate Appellant's right to confrontation and cross-examination. *Crawford,* 541 U.S. at 56; *King*, 189 S.W.3d at 358. Issue Three is overruled.

Had Appellant's right to confrontation been violated by the admission of the statement, it

13

would not have required reversal. *See* Tex. R. App. P. 44.2(a). As discussed in the harm analysis regarding Issue Two, the State offered additional evidence supporting its assertion of Appellant's leadership role in the crime and his propensity towards violence. Additionally, Appellant pleaded guilty to both offenses, admitting all elements of the crimes and concluding his guilt. *See Crawford,* 617 S.W.2d at 929. The State had a strong cumulative case against Appellant and Appellant declined to offer contradictory evidence against the statement at issue. *Davis,* 203 S.W.3d at 852.

Appellant's sentence was far below the maximum permitted sentence and fell within the punishment range, contradicting Appellant's assertion the prosecutor's use of the statement to reinforce the need for a very long, stiff sentence led to Appellant being harmed by an excessive sentence. Tex. Penal Code Ann. §§ 12.32(a), 12.42(b), (c)(1), 20.04(a), (b), (c), 29.03 (West 2011); *see Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd)(sentences falling within the statutory sentencing guidelines are not disproportional or excessive). We disagree with Appellant's assertion of the statement's importance in the State's argument for a long sentence and find the statement's indication that Appellant was the most violent of the three men was corroborated by other evidence in the record. *Davis,* 203 S.W.3d at 852. Following our review of the record, we are convinced beyond a reasonable doubt that had any confrontation error occurred, it would not have had a significant impact on the mind of an average juror in determining Appellant's punishment. *Id.* Issue Four is overruled.

### Court Costs

In Issue Five, Appellant claims error in the trial court's assessment of court costs and in its order that Appellant provide reimbursement for court-appointed attorney's fees when

14

Appellant had previously been found indigent and the record contains no subsequent evidence of a material change in Appellant's financial circumstances.

*Standard of Review*

Texas Code of Criminal Procedure article 26.05 grants a trial court authority to order a defendant to reimburse court-appointed attorney's fees, if the trial court determines the defendant has the financial resources to off-set, in part or in whole, the costs of the legal services received. TEX. CODE CRIM. PROC. ANN. art. 26.05 (West 2009). Once a defendant has been found indigent and an attorney has been appointed, a trial court errs by ordering the reimbursement of attorney fees absent determination that a defendant has financial resources which enable him to offset, in whole or part, the costs of legal services provided to him. *See Mayer v. State*, 274 S.W.3d 898, 901 (Tex. App.—Amarillo 2008), *aff'd*, 309 S.W.3d 552, 553 (Tex.Crim.App. 2010). A reviewing court may remedy such an error by modifying the judgment and deleting the portion which orders an indigent defendant to pay court-appointed attorney's fees. *See Mayer*, 309 S.W.3d at 557.

*Analysis*

Appellant argues the trial court erred in ordering him to pay court costs and attorney's fees after he had been found indigent on multiple occasions. The trial court first found Appellant indigent after his arrest when the court initially appointed counsel. After counsel withdrew from representation, the trial court again found Appellant to be indigent and appointed a second attorney. The trial court found Appellant indigent a third time after his second trial counsel withdrew and again appointed another attorney to represent Appellant. Appellant asserts, and the State agrees, there is no evidence in the record indicating a material change in

15

Appellant's financial circumstances to demonstrate his ability to reimburse attorney's fees. Appellant's argument relies on authority and analysis regarding the payment of attorney's fees and does not provide a separate analysis regarding court costs.

We agree that the record contains no evidence demonstrating that Appellant had a material change in financial circumstances that would enable him to comply with the trial court's order to reimburse court costs and attorney's fees. *Mayer*, 274 S.W.3d at 901. Therefore, we modify the judgment by deleting the order requiring Appellant to reimburse court-appointed attorney's fees. *See Mayer*, 309 S.W.3d at 557. The bill of costs does not impose a payment for attorney's fees, and because Appellant does not raise a legal challenge to any of the specific court costs assessed on the bill of costs, we need not review the legality of each cost nor do we modify the amount of the court costs. *See Houston v. State,* 410 S.W.3d 475, 479 (Tex. App.—Fort Worth 2013, no pet.). Issue Five is sustained in regard to attorney's fees and overruled in regard to court costs.

## CONCLUSION

The trial court's judgment is affirmed as modified.


GUADALUPE RIVERA, Justice

August 8, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

16