

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-25-00167-CR

---

JOHN DOWDY, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1852611

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Tarrant County[1] jury convicted John Dowdy of continuous sexual abuse of a young child younger than fourteen years of age and assessed his punishment at thirty-five years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.02(b)(2)(A). Gerald[2] described years of repeated abuse beginning when he was about five years old. Gerald testified that Dowdy ingested alcohol or methamphetamine every time that Dowdy sexually abused him. Another victim, Taylor, also testified that Dowdy touched him when he was a teenager, but Taylor testified that he denied to law enforcement on two occasions that Dowdy sexually assaulted him.

In his sole issue, Dowdy argues that the trial court abused its discretion by admitting Gerald's testimony that Dowdy drank alcohol and smoked methamphetamine before the abuse. He argues that the drug use evidence had only nominal probative value, was unfairly prejudicial, and confused the issues in violation of Rule 403 of the Texas Rules of Evidence. *See* TEX. R. EVID. 403. Because the State had a need for the evidence since credibility was at issue for both context and Dowdy's mental state, the trial court did not abuse its discretion. We affirm the trial court's judgment.

---

[1]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2]We use pseudonyms and initials to protect the identities of the victims who were minors at the time of the offenses. *See* TEX. CONST. art. I, § 30(a)(1) (conferring crime victims with "the right to be treated with fairness and with respect to the victim's dignity and privacy throughout the criminal justice process"); TEX. R. APP. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

## I. Applicable Facts

Gerald's parents separated when he was two years old, and he lived with his mother in Tarrant County. Gerald's mother struggled with alcohol abuse. On weekends when Gerald was not visiting his father, he often stayed with Dowdy to escape his home life. Although not actually related, Gerald considered Dowdy an uncle.

Dowdy lived at the rear of his uncle's property. Gerald began visiting Dowdy when Gerald was about five years old and Dowdy was in his forties. Over the next several years, Gerald visited Dowdy more than a few hundred times, mostly on the weekends. Gerald recalled many positive aspects of his relationship with Dowdy. However, Gerald testified that Dowdy repeatedly had him perform sexual acts in exchange for gifts.

Gerald said that Dowdy drank alcohol or smoked methamphetamine every time that Dowdy sexually abused him. Gerald testified that when Dowdy drank, he became "very emotional," and when Dowdy smoked methamphetamine, he became "very energetic."

Patrick Knotts, an investigator for the Tarrant County District Attorney's Office, testified that he made contact with another victim, Taylor, when Taylor was at a drug rehabilitation center. On cross-examination, Knotts testified about his meeting with Taylor, who initially stated that Dowdy never did anything sexually to him. Knotts further acknowledged that "[w]hen [Taylor] was reported as a runaway, . . . the Sheriff's Department did briefly speak to [Taylor] and ask him had he ever been a victim of anything and he told them no." However, Knotts acknowledged that after forty minutes of interviewing Taylor, he made an admission about "something going on."

Taylor also testified that Dowdy sexually abused him.

Taylor stated that when he went to his friend's house, Taylor and his friend would hang out, play video games, and smoke marihuana with Dowdy. Dowdy lived in a garage apartment behind Taylor's friend's house. When Taylor was alone with Dowdy, Dowdy gave Taylor money to touch Taylor's penis.

Even so, Taylor twice denied to law enforcement officers that Dowdy had sexually abused him: once during an investigation when Taylor was reported as a runaway, and again to Knotts while preparing this case for trial. Taylor said that he denied the sexual abuse to Knotts because he was uncomfortable talking about it. Taylor stated that he voluntarily put himself in rehabilitation for nicotine and marihuana and had been diagnosed with anxiety, depression, and oppositional defiant disorder.

Before trial, the trial court heard a motion in limine filed by Dowdy regarding the drug-use evidence. Knotts and Gerald testified at the hearing. The trial court stated that the evidence was same transaction-contextual evidence and therefore admissible. Nonetheless, the jury charge included a limiting instruction on extraneous offenses. Specifically, the charge instructed the jury that it could not consider any testimony about Dowdy's extraneous offenses for any purpose unless it first found beyond a reasonable doubt that Dowdy committed such acts and that, even then, it could consider the evidence only for specified purposes (such as motive, intent, absence of mistake or accident, or to rebut a defensive theory).

After hearing the evidence, the jury found Dowdy guilty of continuous sexual abuse of a young child. The jury then assessed Dowdy's punishment at thirty-five years' confinement.

4

**II.     The Trial Court Did Not Abuse its Discretion in Admitting the Extraneous Acts**

In his sole issue, Dowdy argues that Gerald's testimony about Dowdy's drug use was (1) only nominally probative, (2) dissimilar to the charged offense, (3) unnecessary because the State had Taylor's testimony to corroborate Gerald's testimony, and (4) unfairly portrayed Dowdy as a criminal in general, causing the jury to confuse the issues.

**A.     Standard of Review**

"[A] trial judge's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025) (alteration in original) (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)). "So, too, is a ruling on the balance between probative value and the counter factors set out in Rule 403, although that balance is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Id.* (quoting *De La Paz*, 279 S.W.3d at 343). "[W]e presume that probative value outweighs prejudicial value 'unless in the posture of the particular case the trial court determines otherwise.'" *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g)). "Accordingly, as long as the judge's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the ruling will be upheld." *Id.* (citing *De La Paz*, 279 S.W.3d at 343–44). "Further, if the trial judge's ruling is correct on any applicable legal theory, the ruling will stand." *Id.* (citing *De La Paz*, 279 S.W.3d at 344).

**B.     Applicable Law**

"Putting the evidence together illuminates the nature of the crime . . . ." *Inthalangsy v. State*, 634 S.W.3d 749, 757 (Tex. Crim. App. 2021). "Evidence of a crime, wrong, or act other

than the offense charged is not admissible to prove that the defendant acted in conformity with his character but may be admissible for other purposes." *Id.* at 756 (citing TEX. R. EVID. 404(b)). "These purposes include proving intent and motive as well as illustrating other aspects of an 'indivisible criminal transaction,' also known as same-transaction contextual evidence." *Id.* (quoting *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)). "The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense." *Devoe*, 354 S.W.3d at 469. "'It is well settled that where one offense or transaction is one continuous episode, or another offense or transaction is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper.'" *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (quoting *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex. Crim. App. 1983)). However, "a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense." *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008) (citing *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994)).

"In addition to satisfying the requirements of same transaction contextual evidence, to be admissible, extraneous offense evidence must also satisfy the balancing test of rule 403." *King v. State*, 189 S.W.3d 347, 354 (Tex. App.—Fort Worth 2006, no pet.) (citing TEX. R. EVID. 403).

> Generally, although a trial court must still perform a balancing test to see if the same transaction contextual evidence's probative value is substantially outweighed by its prejudicial effect, the prejudicial nature of contextual evidence rarely renders such evidence inadmissible, as long as it sets the stage for the jury's comprehension of the whole criminal transaction.

*Id.* at 354–55.

6

"Even when evidence is relevant, a court may exclude it 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.'" *Inthalangsy*, 634 S.W.3d at 758 (quoting TEX. R. EVID. 403) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 640–42 (Tex. Crim. App. 2006)).[3] "The fact that an item of evidence shows the defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds: 'Almost all evidence offered by the prosecution will be prejudicial to the defendant. Only evidence that is *unfairly* prejudicial should be excluded.'" *Id.* (quoting *DeLeon v. State*, 77 S.W.3d 300, 315 (Tex. App.—Austin 2001, pet. ref'd)).

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (citing *Montgomery*, 810 S.W.2d at 389). "This presumption places the burden on the party opposing admission to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403." *Hance v. State*, 714 S.W.3d 775, 811 (Tex. App.—Fort Worth 2025, no pet.).

"To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test." *Id.* (citing *Montgomery*, 810 S.W.2d at 389; *Gigliobianco*, 210 S.W.3d at 641–42).

When conducting a Rule 403 balancing test, a court

---

[3]*Inthalangsy* involved a Rule 403 balancing regarding same transaction contextual evidence. *Inthalangsy*, 634 S.W.3d at 758–79.

must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco*, 210 S.W.3d at 641–42. In any given case, "these factors may well blend together in practice." *Id.* at 642.

### C.     Analysis

Dowdy asserts that the trial court's decision falls outside of the zone of reasonable disagreement because (1) drug use and sexual abuse of a child are dissimilar offenses, (2) the State did not need the drug-use evidence because the sexual abuse of Gerald was corroborated by the testimony of Taylor, and (3) the trial court's limiting instruction was insufficient to overcome the prejudice of depicting Dowdy as a "long-time addict" and a "jack-of-all-trades criminal."

The State responds that (1) the risk of undue prejudice from evidence of drug use is low when the charged offense is sexual abuse of a child; (2) the risk of confusion from the drug use testimony is low; (3) drug use "helps explain how a person could repeatedly commit such unspeakable crimes against a vulnerable young child"; (4) since Dowdy put Gerald's credibility at issue, and since there was no physical evidence of the charged offense, Gerald's recall of the episodes of sexual abuse and their circumstances enabled the jury to assess Gerald's credibility; and (5) nothing in the record rebuts the presumption that the jury followed the limiting instruction given by the trial court.

It was well within the zone of reasonable disagreement for the trial court to conclude that sexual abuse of a child is worse than drug use. *See James*, 623 S.W.3d at 549 ("[T]his third factor weighs in favor of admission of the extraneous-offense evidence that is not more heinous than the charged offenses."). Likewise, it was well within the zone of reasonable disagreement for the trial court to conclude that the risk of the jury confusing drug use with sexual abuse of a child was low. So too was it in the trial court's zone of reasonable disagreement to conclude that, testimony from another victim notwithstanding, Gerald's testimony regarding Dowdy's drug use in association with the episodes of sexual abuse remained probative of Gerald's credibility, and that such testimony would be considered by the jury for purposes consistent with the trial court's limiting instruction.[4] In sum, it was within the trial court's zone of reasonable disagreement to consider that Gerald's brief testimony[5] about Dowdy's drug use "set[] the stage for the jury's comprehension of the whole criminal transaction," and was, on balance, more probative than prejudicial. *King*, 189 S.W.3d at 354–55.

We overrule Dowdy's sole issue.

---

[4]*See Allison v. State*, 666 S.W.3d 750, 765 (Tex. Crim. App. 2023) ("There is no evidence the jury did not follow the trial court's instructions regarding the extraneous offenses, so we presume the jury did follow the trial court's instructions."). Here, the trial court mitigated any tendency of the drug use evidence to confuse or distract the jury from the main issues at trial by (1) properly identifying each element that the State was required to prove by its indictment, (2) ensuring that the focus of the application paragraph was only on the offenses committed against Gerald that were specified by the indictment, and (3) instructing the jury that it was not to consider the extraneous-offense evidence "for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crime, wrong, or bad act, if any were committed" and to "only consider the same in determining . . . [Dowdy's] motive, intent, absence of mistake or accident, or to rebut a defensive theory."

[5]The testimony at issue consists of three pages of the reporter's record of the trial.

## III.    Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:    March 31, 2026
Date Decided:    May 19, 2026

Do Not Publish